ILMA VOGT, Appellant, v. IDA H. WURMB, Executrix of Theodore H. Wurmb, WILLIAM BARTELS, Doing Business as BARTELS & SONS, Painters, and AUGUST HOELSCHER and AUGUST HOELSCHER, JR., Doing Business as RED WING MARKET.—300 S. W. 278.

Division One, December 7, 1927.

*Douglas H. Jones* for appellant.

472

*Jones, Hocker, Sullivan & Angert* and *Willard.A. McCaleb* for respondent, Theodore H. Wurmb.

RAGLAND, J.—In this action plaintiff seeks to recover $15,000 as damages for personal injuries sustained through the alleged negligence of the defendants.

On the 19th day of August, 1922, the defendants, Hoelschers, were, and for some time prior thereto had been, conducting a meat and vegetable market in a two-story brick building in the city of St. Louis, known as 4005 West Florissant Avenue. The building was owned by Theodore H. Wurmb and the Hoelschers were his tenants. In order to enter the market from the street it was necessary to go up a flight of four steps. These steps were of concrete, in good condition, without a break or crack in them, and there was a hand-rail on each side. The treads were four and a half feet long and fourteen and a half inches wide; the risers were eight inches in height. A day or two prior to the date mentioned Wurmb had employed defendant Bartels to paint the front of the building, including the foundation and the concrete steps. Bartels painted the steps last and when he had finished he placed a board on each step to protect the paint until it had dried, the steps being the only means of entering or leaving the market available to customers, who were coming and going all the time. The boards were furnished by one of the Hoelschers. They were taken from a box in which oranges had been shipped. They were approximately two feet in length and from a quarter to a half inch in thickness. Their widths varied from six to eight inches. One of them was placed midway between the ends of each step; all of them were sound and lay flat against the tread. They were not fastened.

At the time of the occurrence to be presently described, plaintiff was a married woman, fifty years of age, and for aught that appears was in the enjoyment of the normal use of all her senses and organs of locomotion. She had been a regular customer of the Hoelschers, going to their market for supplies regularly two or three times a week. She went there about eleven o'clock on Saturday morning, August 19, 1922, to get some meat and vegetables while the premises were in the condition heretofore described. What she observed and what happened to her will be set forth in her own language:

"When I entered I noticed the store was just newly painted and had some boards on the concrete steps. There were about four or five. I went up these steps over these boards and noted the steps had been recently painted. While in the store I purchased meats and vegetables and then started out of the store. . . .

"When I went in I noticed there were boards on every step which did not cover the whole step. They were of various widths, but were all of one thickness, orange boxwood, perhaps a quarter or half inch thick, I don't know. I am pretty sure I took two steps before I fell and then stepped on the board which caused my foot to slip off. I was wearing flat oxfords with a flat heel like those the gentlemen of the jury are wearing. I weigh about 165. . . .

"I was coming down the steps. They are stone or concrete, whatever you call those steps. They are not wood. I was coming down those steps. There was little boards laid on those steps. As I came down, the heel of my shoe caught on the back of the board. They were not as big as the steps and the heel caught on it and went on out, see, and threw my foot up and that board got tangled into my foot and tripped me.

"It could be that my heel got back there and pushed the board; I don't know, but at least the board went out and that is the thing that throwed me down; I fell backwards on the step; but that board going over it throwed my foot.

"When I went into the store it was dry; it was not raining; there was nothing to turn the boards up on either end, that I know of; so far as I knew they were firm; had no difficulty going in; I looked as I went down and it looked safe to step my foot on it; there was a hand-rail on the side; that I held on to; had market basket on left arm; nothing on other.

"The board went out from under me, swung over my left foot, tripped me, and almost turned me around; threw me around and I hit with my back on the point of the step; the board went out and stood up and hit on top of my other foot; and went clear on out to the sidewalk.

"The shoes I was wearing on that day were in good condition; good heels on them."

The owner of the building, the tenants and the painter were all made parties defendant.

The petition charged negligence as follows: (1) that defendants "negligently and carelessly failed to exercise ordinary care and diligence to keep the said steps in a reasonably safe condition, when they negligently and carelessly placed the said boards on said concrete steps, making the steps dangerous and unsafe for persons lawfully using the same;" (2) that defendants "negligently and carelessly failed and neglected to exercise ordinary care and diligence to

keep and maintain the said steps in a reasonably safe condition, when they permitted and allowed the said boards to remain upon the said steps, making the steps dangerous and unsafe for persons lawfully using them;'' and (3) that defendants "negligently and carelessly placed said boards on said concrete steps, making the steps dangerous and unsafe for persons lawfully using the same."

Wurmb and the Hoelschers each answered with a general denial and a plea of contributory negligence; Bartels' answer was merely a general denial.

At the conclusion of plaintiff's case in chief the trial court sustained demurrers to the evidence as to the defendants, the land owner and the tenants. Plaintiff thereupon took an involuntary nonsuit as to those defendants and a voluntary nonsuit as to defendant Bartels, the painter. Upon the court's subsequent refusal to set aside the involuntary nonsuit, plaintiff was allowed an appeal to this court. Respondent Wurmb has died pending the appeal and the cause has been revived in the name of his executrix, Ida H. Wurmb.

On the facts of this case we have to consider, not the duty which a carrier owes to a passenger, or an employer to an employee, or a municipality to the traveler on its thoroughfares, but that which the owner or occupier of land owes to his invitee. With respect to this latter duty and the liability growing out of its breach, the well-settled rule is this: The owner of lands is liable in damages to those coming thereon, using due care, at his invitation or inducement, express or implied, or any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the premises, which is known to him and not to them, and which he has suffered negligently to exist, and of which they have received no notice. [Main v. Lehman, 294 Mo. 579, 243 S. W. 91; Mullen v. Sensenbrenner Merc. Co., 260 S. W. 982; Welch v. McAllister, 15 Mo. App. 492; Donaldson v. Wilson, 60 Mich. 86; Calvert v. Springfield Light Co., 231 Ill. 290; Bennett v. Railroad, 102 U. S. 577; 20 R. C. L. 56, par. 52.]

In Ruling Case Law, supra, it is said:

"The mere ownership of land or buildings does not render one liable for injuries sustained by persons who have entered thereon or therein; the owner is not an insurer of such persons, even when he has invited them to enter. Nor is there any presumption of negligence on the part of an owner or occupier merely upon a showing that an injury has been sustained by one while rightfully upon the premises. The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. . . . And, hence,

there is no liability for injuries from dangers that are obvious, or as well known to the person injured as to the owner or occupant.''

The text is abundantly supported by the authorities.

Applying the principles just stated to the facts disclosed by the record it is clear that no liability exists. The method of protecting freshly painted steps which are in use by laying boards on the treads is one commonly employed. While somewhat more care is required to walk up or down steps covered as were those complained of in this case than ones not so covered, they were not inherently dangerous. But in any event whatever danger inhered their condition was perfectly obvious. There was no lurking peril; nothing touching the physical situation was hidden or concealed. What plaintiff saw in going up the steps and upon her return to come down them disclosed to her all the information which the proprietors of the store had touching both their condition and the care required to use them with safety.

It follows that the demurrers to the evidence were well ruled by the trial court. Its judgment is accordingly affirmed. All concur.