WILLIAM GILES v. MOUNDRIDGE MILLING COMPANY, a Corporation, and ERNESTINE J. KELTNER, Appellants.—No. 38467.—173 S. W. (2d) 745.

Division Two, August 27, 1943.

*Paul C. Sprinkle, Wm. F. Knowles* and *Sprinkle & Knowles* for appellants.

570

*Spurgeon L. Smithson* for respondent.

BARRETT, C.—To recover for injuries sustained when he fell in a mill at Pleasant Hill, Missouri, William Giles instituted this action against the Moundridge Milling Company and its manager, Ernestine J. Keltner. At the close of all the evidence the trial court indicated its intention of giving Miss Keltner's peremptory instruction in the nature of a demurrer to the evidence and Giles took an involuntary nonsuit as to her. Nine of the jury found against Giles and in favor of the milling company. He filed a motion for a new trial as to the Moundridge Milling Company and a motion to set aside the involuntary nonsuit as to Miss Keltner. The trial court sustained both these motions and the milling company and its manager, Miss Keltner, appeal.

In his motion for a new trial as to the milling company Giles set forth twelve grounds or reasons for the motion and the record recites that the motion "was by the court sustained for all reasons set forth therein." The appellant milling company assigns this ruling as error and contends that the effect of the court's ruling was to sustain the plaintiff's motion for a new trial without assigning any specific reason or reasons therefor and that in so doing the court violated the statute requiring the court's order to "specify of record the ground or grounds on which said new trial is granted." Mo. R. S. A., Sec. 1169; King v. Kansas City Life Ins. Co., 350 Mo. 75, 164 S. W. (2d) 458. The respondent, Giles, contends that the court's order assigning reasons is a compliance with the statute and the ruling of the King case. Furthermore, the respondent contends that the verdict in favor of the milling company was against the weight of the evidence and that two erroneous instructions were given on behalf of the appellants and thereby the respondent seeks to demonstrate the propriety

of the court's action and, in addition, sustain his burden of pointing out assignments in the motion for a new trial which should have been sustained. King v. Kansas City Life Ins. Co., supra; Dove v. Atchison, T. & S. F. Ry. Co., 349 Mo. 798, 163 S. W. (2d) 548.

In this instance there is a strong probability that the court's order sustaining the motion for "all reasons set forth therein" is not within the intended spirit of the statute and ruling of the King case because at least six of the assigned grounds are without merit and even without point [747] and no effort is made to justify those reasons here. Yet it cannot be denied that the order is a technical and literal compliance with the statute which only requires the court's order to "specify of record the ground or grounds on which said new trial is granted." Mo. R. S. A., Sec. 1169; King v. Kansas City Life Ins. Co., 350 Mo. 75, 164 S. W. (2d) l. c. 464. Three of the assignments in the motion for new trial and presumably three of the reasons for the court's order were, in effect, that the verdict for the appellant was against the weight of the evidence. The last ground set forth in the motion and presumably one of the reasons included in the court's order is that "the verdict is unsupported by substantial evidence." It may be that the latter assignment in the motion and as one of the court's reasons is equal to an assignment or reason that "there was no substantial evidence" and means that there was no evidence whatever to support the jury's verdict for the appellant. King v. Kansas City Life Ins. Co., 350 Mo. 75, 164 S. W. (2d) l. c. 459, 461. See, however, State v. Gregory, 339 Mo. 133, 96 S. W. (2d) 47. If so it demonstrates that a technical compliance with the statute is not always a specification of grounds or reasons within its intended meaning. If the specification is subject to that construction and has meaning we might have to consider whether we would continue to follow the view that an assignment or reason that there was no evidence conflicts with and erases the specified reason that the verdict was against the weight of the evidence leaving the former only for consideration. Compare: King v. Kansas City Life Ins. Co., 350 Mo. 75, 164 S. W. (2d) l. c. 461; Schroeder v. Rawlings, 344 Mo. 630, 127 S. W. (2d) 678 and Crawford v. Kansas City Stockyards Co., 215 Mo. 394, 114 S. W. 1057; Gates v. Dr. Nichols' Sanatorium, 331 Mo. 754, 55 S. W. (2d) 424. But, as Judge Frank said, "Plaintiff's first contention is that the verdict in defendant's favor is not supported by substantial evidence. The sufficiency of the evidence to support the verdict in defendant's favor is not an open question in this court; therefore we need not concern ourselves about what the evidence showed in that regard. The burden was not on the defendant, but was on the plaintiff to make out the case stated in his petition. In a case where the allegations of the petition are denied by the answer, and the plaintiff offers oral evidence tend-

ing to support the allegations of the petition, the defendant is entitled to have the jury pass upon the credibility of such evidence even though he should offer no evidence himself. The court has no right to tell the jury that it must believe the witnesses. . . . The only claim made respecting such evidence is that it was not sufficiently substantial to support the verdict in defendant's favor. Whether or not the verdict was against the weight of the evidence was a proper question for the trial court, but for reasons heretofore stated, this court has no authority to determine it." Cluck v. Abe, 328 Mo. 81, 84, 86, 40 S. W. (2d) 558; Connole v. E. St. L. & Sub. Ry. Co., 340 Mo. 690, 102 S. W. (2d) 581. Compare to the exceptional circumstance instanced by Magoffin v. Missouri Pac Ry. Co., 102 Mo. 540, 15 S. W. 76. Only three instructions were given for the defendant and two of those were on the burden of proof. There was no instruction on contributory negligence. There were no withdrawal instructions, either offered or given. Consequently, there was no issue in the case upon which the court could have directed a verdict for the plaintiff. Certain it is that the court could not have done so under this record for the reason that there was no evidence whatever to support a verdict for the defendant. The consequence is that one of the trial court's reasons for granting the plaintiff a new trial must have been the discretionary and permissive reason that the court thought the verdict in favor of the defendant was against the weight of the evidence. Reichmuth v. Adler, 348 Mo. 812, 155 S. W. (2d) 181; Murphy v. Kroger Grocery & Baking Co., 350 Mo. 1186, 171 S. W. (2d) 610; Cluck v. Abe, supra; King v. Kansas City Life Ins. Co., supra.

The appellant, Moundridge Milling Company, contends that in any event a verdict should have been directed in its favor because there was no proof of any negligence on its part for which the respondent was entitled to recover.

Miss Keltner, as manager of the Moundridge Milling Company, agreed to buy the "good" grain sacks from Giles' and Arvin's collection. She told them to unload the sacks in front of the elevator and one of the men would check them. From the entrance nearest the scales and through the mill past the elevator there is a "runway." The "runway" is a strip or section of tongue and grooved pine flooring laid across the floor of the mill. It is five or [748] six feet wide and the thickness of the boards higher than the level of the mill floor which the witnesses say is from an inch to two inches. There was a space estimated at from three to five inches wide between the runway and the elevator shaft. The elevator shaft was not enclosed but there were uprights at each corner of the shaft and across the front of the elevator shaft there was a wooden bar which laid in slots in the upright posts.

The sacks were carried in and placed on the runway in front of the elevator. At that time the elevator itself was on that floor of the mill but was from an inch to two inches below the level of the floor. Arvin carried in the first sacks and stood watching as the assistant manager counted and graded them. Giles carried in other of the sacks and as he was watching the sorting of the sacks got off balance, as he stood between the sacks and the elevator, and fell, landing on the elevator and fracturing his left hip.

■ The basis of the appellant's argument that a verdict should have been directed for it is that there was no proof of any negligence because the plaintiff admitted that he saw the floor and its condition before he fell and, therefore, there was no duty upon the milling company to warn him or to do anything else to prevent his falling because the evidence shows without contradiction that he fell by reason of a condition which was open, obvious and apparent to him. Murray v. D'Oench Co., 347 Mo. 365, 147 S. W. (2d) 623; Lindquist v. Kresge Co., 345 Mo. 849, 136 S. W. (2d) 303; Vogt v. Wurmb, 318 Mo. 471, 300 S. W. 278; Paubel v. Hitz, 339 Mo. 274, 96 S. W. (2d) 369.

What the appellant says would be true if the factors pointed out and stressed by it were the only circumstances involved. For example, both Giles and Arvin testified that there was grain on the floor—that the runway was higher than the level of the floor and that as Giles shifted his position one of his feet got over the edge of the runway, he got off balance and fell. Both Giles and Arvin could and did see the floor and the runway. And, as the trial court said: ". . . . there isn't any use of wasting time on the question of whether grain caused him to fall down. He says he didn't look at the floor, that he could have but he didn't, which would take that question out of the case." These are the circumstances stressed by the appellant and, as we have indicated, if they were the only circumstances relied upon as creating liability its position might be well taken as the respondent's case might then fall within the ruling of the above cases because the owner or proprietor is not an insurer of his business invitee's safety (Main v. Lehman, 294 Mo. 579, 243 S. W. 91) and neither does he breach his duty to such an invitee when the condition complained of is open and obvious or as apparent to the invitee as it is to the owner or proprietor, because the basis of liability in such cases is the owner's supposed superior knowledge. Murray v. D'Oench Co., supra; Stoll v. First National Bank, 345 Mo. 582, 134 S. W. (2d) 97; Paubel v. Hitz, supra. When the condition relied on is obvious or actually known to the invitee there is no duty on the owner to warn him. Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S. W. (2d) 723.

■ In this case the respondent relied upon a further circumstance which he claims demonstrates a dangerous condition known to or

discoverable by the possessor of land and unknown to and undiscoverable by him as a business visitor which caused his injuries and that, therefore, liability follows. 2 Restatement, Torts, Sec. 343; Annotations 118 A. L. R. 425; 100 A. L. R. 710; 58 A. L. R. 136; 46 A. L. R. 1111; 43 A. L. R. 866; 33 A. L. R. 181. The respondent's evidence showed the circumstances the appellant points out but in addition he plead and his main instruction covered the additional factor of the proximity of the elevator, its uprights and the wooden bar across the front of the elevator in the slots of the uprights. As to those he plead ''that the posts supporting said bar at said entrance to said elevator . . . were loose and the said bar was worn and rounded at its ends so that the said bar was likely to fall on slight pressure; that . . . there was danger and unreasonable risk of injury to the defendants' invitees who might be using said runway or might be standing thereon or thereabouts . . . in that said bar was likely to fall on slight pressure should such an invitee try to catch or protect himself therewith from getting off balance . . .''
He plead the circumstances of his presence and said that ''he got off balance and in trying to protect himself from so getting off balance he reached for said bar which by reason of said dangerous conditions and the negligence [749] of defendants gave way causing plaintiff to fall in said shaft upon said elevator . . .'' He plead and required the jury to find the defendants guilty of the following specific acts of negligence: ''That the defendants negligently failed to provide and maintain a reasonably sufficient bar or guard at the said entrance to said elevator; that the defendants negligently caused and permitted the posts supporting said bar at said entrance to be and remain loose and wobbly and the said bar to be worn and rounded at its ends so that said bar was likely to fall on slight pressure; that though the defendants knew or by the exercise of reasonable care should have known of said dangerous conditions . . . and that plaintiff did not know of its dangers'' they were permitted to exist and caused the respondent's fall and injuries.

The evidence shows the bar and upright posts to be in the condition described by the petition and the appellants do not deny that fact but argue that the evidence shows that the respondent ''fell by reason of his foot getting over the edge of the runway which was an inch above the floor and that he then lost his balance and fell against or on the bar'' and that, therefore, the bar, the posts and their condition were not the proximate cause of his fall. They reason that because of the inch or two inches difference in the floor and the runway that the case is within the ruling of the slight step down in the theatre in Peck v. Yale Amusement Co. (Mo.), 195 S. W. 1033, or the painted steps in Vogt v. Wurmb, supra. They say, assuming there was negligence with respect to the condition of the bar, yet

even if there had been no negligence as to it "would the injury to the plaintiff have been prevented? The answer is no. The reason for this answer is that neither the presence nor the condition of the bar had anything to do with causing the plaintiff to fall." They say he was caused to fall by a condition which was not negligence to start with but which was open and admittedly apparent to him. In short, their argument, of necessity, is that the bar was not the proximate cause of the respondent's fall and that the case is, therefore, controlled by Boyd v. Logan Jones Dry Goods Co., 340 Mo. 1100, 104 S. W. (2d) 348. The latter opinion concludes that "the diagonal step was not the proximate cause of Mr. Boyd's injury. Not only. did Mr. Yocum ascend the step directly before his eyes, but either version of Yocum's conversation with him shows that Mr. Boyd fell, after he had *stepped* off the balcony step, because of his knee or knees (giving way or going from under him), and not because he failed to see the step, fell off the step, or had his feet slip from the step. Since the evidence shows that he said he fell after he *stepped* off the step, a case cannot be made on the theory that he fell because he did not know that there was a step."

Exactly the same situation is not present in the instant case. Arvin said that after he carried in the first sacks and while Giles was outside he placed his hand on the bar and it fell. As he replaced the bar to its former position the assistant manager who was counting the sacks said: "You come pretty near breaking your can, didn't you." In a short time Giles brought in more sacks and as he stood between a pile of the sacks and the elevator watching the sorting he shifted around some, moving his feet slightly. One foot got near the edge of the runway and "seemed like his foot kind of give on something there on the runway" and when his foot seemed to give "he put his hand up on that bar and it fell out." He got off balance and put "his left hand" up towards the bar and he fell down on the elevator floor. On cross-examination Arvin said: "It seemed like his foot give a little bit and he got over to that edge and he got off balance and he put that hand on this bar (demonstrating), is the only way I know how to explain it. . . . Q. The bar didn't make him loose his balance? A. He didn't have hold of the bar. Q. He was off balance before he ever reached for the bar or fell down on the elevator, wasn't he? A. Yes, sir. . . . Q. *The bar on the elevator didn't make him fall down? A. Why I don't know how to answer that. If the bar had stayed there, he wouldn't have fell down. If he had put his hands on it, he would have steadied himself.* Q. If there had been a chair there and he had put his hand on it, it would have held him up? A. Yes. Q. And, if the chair had turned over, he would have fell on the floor? A. Certainly. . . . Q. Was he falling when he put his hand on the bar? A. *No, it seemed to me* [750] *he got off balance, just like I tell you.* I don't

know about these things. *And he put his hand on the bar and it come out.* Q. He was falling or off balance when he did that? A. *I would say he was off balance. I wouldn't say he was falling. . . .* Q. *Of course, if there hadn't been any bar across the elevator there, he would have fallen on the floor of the elevator, wouldn't he?* A. *I don't know, if he hadn't put his hand on the bar, if he would have fell or not. I can't say that. I don't know those things.*"

Giles said his left foot got near the edge of the runway and "I lost my balance a little. . . . I twisted my foot that way a little and I lost my balance." He said he was off balance when he put his hand on the bar but that he was not then falling—that when he put his hand on the bar "it gave way" and he fell. He saw the bar before he fell but he did not know anything about its condition before he put his hand on it to catch his balance.

We cannot say with the appellants that this evidence conclusively shows that an open and known obvious condition caused and was the sole and proximate cause of Giles' fall. It may have been, as Arvin said, if there had been a chair there it would have held him up—or, if the chair had turned over he would have fallen. Or, "if the bar had stayed there he wouldn't have fell down." Or, as he said when asked whether Giles would have fallen, if there had been no bar there at all: "I don't know, if he hadn't put his hand on the bar, if he would have fell or not. I can't say that. I don't know those things." And neither does anyone else know absolutely what would have happened under these variously supposed conditions. The bar was there and it was worn and rounded on the ends and did not fit securely into the slots on the uprights. And the uprights were loose at the floor. The bar and the uprights were in such condition that the bar would and did fall on slight pressure. It may be that the bar need not have been there at all since the elevator was at that floor level but, it was there and was not in a very good state of repair. If it had not been there at all Giles would have tried to regain his balance with its aid and thereby might not have fallen at all or if he had fallen, not in the place and manner he did. Since the bar was there it is not unreasonable to say that it was there for some purpose or being there that one could rely on its being in such condition that it could be safely used to regain one's balance. If the elevator had not been at that floor level would the bar have been there? Would it have served its purpose? Proximate cause in this case was clearly and peculiarly a jury question. Northern v. Chesapeake & Gulf Fisheries Co., 320 Mo. 1011, 8 S. W. (2d) 982.

The test relied on by the appellants is applicable: "The test of whether there is a casual connection between the alleged negligence and the injury is that the facts show that, absent the negligent act, the injury would not have occurred." Rose v. Thompson, 346 Mo.

395, 141 S. W. (2d) 824; 2 Restatement, Torts, Sec. 432(1). Here, the answer required by the appellants to the test does not appear from a consideration of the facts. "The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a *substantial* factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." 2 Restatement, Torts, Sec. 431. That is the American Law Institute's definition of legal or proximate cause. "The word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense in which there always lurks the idea of responsibility, rather than in the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred." 2 Restatement, Torts, p. 1160. Or as the matter is put by Section 432(2) of the Restatement: "If two forces are actively operating, one because of the actor's negligence, the other not because of any misconduct on his part, *and each of itself is sufficient to bring about harm to another, the actor's negligence may be held by the jury to be a substantial factor in bringing it about.*" When "the question is open to a reasonable difference of opinion, . . . it is to be left to the jury." 2 Restatement, Torts, Sec. 434; State ex rel. Emery, Bird, Thayer D. G. Co. v. Shain, 348 Mo. 650, 654, 154 S. W. (2d) 775. If the jury found the bar, the uprights and their condition to be a concurring and proximate cause [751] of Giles' fall and injury it goes without saying that they constituted a lurking or hidden danger for which the milling company would be liable as a proprietor to its business invitee, (Boyd v. Logan Jones Dry Goods Co., supra; Vogt v. Wurmb, supra; 2 Restatement, Torts, Sec. 343; Long v. F. W. Woolworth Co. (Mo.), 159 S. W. (2d) 619, 624) and as to this ground of liability the trial court may, with some reason, have thought the jury's verdict in favor of the appellant against the weight of the evidence.

It is urged that the trial court erred in granting a new trial as to the appellant Keltner because the testimony only showed that she was the manager of the mill and not in full and exclusive control of the mill to the exclusion of her employer, the owner, and consequently no negligence was proved as to her. She says the evidence fails to show any act of misfeasance on her part.

To sustain her position the appellant manager, apparently, relies upon the converse of the rule that "an agent who undertakes the sole and complete control and management of the principal's premises is liable to third persons, to whom a duty is owing on the part of the owner, for injuries resulting therefrom from his negligence in failing to make or keep the premises in a safe condition." 2 Am. Jur. Sec.

334, p. 263. In other words, when an agent has or assumes full and complete control of his principal's premises the agent's liability to the public or to invitees is the same as that of the principal or owner. "An independent contractor or servant to whom the owner or possessor of land turns over the entire charge thereof is subject to the same liability for harm caused to others within or outside the land by his failure to exercise reasonable care to maintain the land in safe repair as though he were the possessor of the land." 2 Restatement, Torts, Sec. 387. Under this rule the agent must have taken over the entire control of the land or building. Annotations 20 A. L. R. 171; 99 A. L. R. 426. The rule is illustrated by the leading case of Orcutt v. Century Bldg. Co., 201 Mo. 424, 99 S. W. 1062, 8 L. R. A. (N. S.) 929. The force of the rule is usually apparent and applicable to instances of real estate companies managing property for owners and it is sought to fasten the owner's liability on the managing company. Brown v. Yeckel, Earickson & Co. (Mo. App.), 129 S. W. (2d) 66; Guthrie v. Albert Wenzlick Real Estate Co. (Mo. App.), 54 S. W. (2d) 801. Miss Keltner contends that since she did not have complete and exclusive control of the mill she comes within the protection of this rule.

This is not the limit of an agent's liability for negligence to his proprietor's or owner's business invitees, however. He is not liable to third persons for a mere failure to perform a duty owing to his principal only (2 Restatement, Agency, Sec. 352) but if he violates a duty which he owes to a third person he is answerable to such person for the consequences of his negligence (Devine v. Kroger Grocery & Baking Co., 349 Mo. 621, 632, 633, 162 S. W. (2d) 813) and he may not escape liability on the supposed differences in nonfeasance, misfeasance and malfeasance. Annotation 20 A. L. R., l. c. 99; Stith v. J. J. Newberry Co., 336 Mo. 467, 79 S. W. (2d) 447; Lambert v. Jones, 339 Mo. 677, 686, 98 S. W. (2d) 752. "On analogy to cases already considered, the agent should be held responsible for injuries caused by the condition of premises in the possession or under the control of the agent where the condition is one for which he is responsible and the injury is such as he would be liable for if he were controlling the premises on his own account." 2 Mechem, Agency, Sec. 1474. Thus there can be tort liability on the part of an agent or manager who does not have complete control of premises—that is to the exclusion of the owner or principal. "The only rule which can be sustained on principle is that the servant or agent is liable for injury to third persons when, and only when, he breaches some duty which he owes to such third person." Annotation 20 A. L. R., l. c. 107; Devine v. Kroger Grocery & Baking Co., supra. When an agent does not have complete control of the premises and it is not sought to fasten the liability of an owner or possessor

on him the test is and should be whether he has breached his legal duty or been negligent with respect to something over which he did have control. "*If an agent has only a limited control over land or chattels he is subject to liability only to the extent that he is authorized to exercise such control.* Thus, an agent who is employed to have general oversight over a building, but who is not authorized to [752] cure defects in it, is under no liability to third persons, except so far as by his conduct he causes them to be in its vicinity." 2 Restatement, Agency, p. 780. For this reason a store manager could be guilty of negligence to a third person with respect to the handling and maintenance of an awning along with his principal and proprietor. Stith v. J. J. Newberry Co., 336 Mo. 1. c. 484, 485, 79 S. W. (2d) 447. For the same reason an agent is not liable along with the owner for some condition over which he has no control and with respect to which he has no duty. Lambert v. Jones, 339 Mo. 1. c. 690, 691, 98 S. W. (2d) 752; Ryan v. Standard Oil Co. of Ind. (Mo. App.), 144 S. W. (2d) 170.

As to the milling company the respondent relied upon the liability and duty of a possessor of land to its business invitee for a dangerous condition known to or discoverable by the possessor. 2 Restatement, Torts, Sec. 343. In the instant case the respondent plead that Miss Keltner was the manager and in complete and exclusive control of the mill. But he alleged as to the manager "that he was directed by defendants to place such sacks . . . on the said runway and space in front of said elevator . . ." He alleged that certain acts of negligence on the part of the defendants "operating separately and concurrently directly" caused him to fall. Specifically he described and relied upon the bar in front of the elevator and the defendants' knowledge or discoverable knowledge of its condition and that they could "have remedied said conditions" but did not; that they directed him to the hazardous place in front of the elevator and failed to warn him of its dangers. The respondent's evidence as to Miss Keltner's authority and duties was that she "was the manager of the Moundridge Milling Company" for a year and a half or two years and prior to that time she was employed by the mill as a secretary-stenographer. As to keeping up repairs she said: "It was up to me unless it was something real large; then it was referred to the office. Q. If it was a matter of remodeling or something like that, you would take it up with the office? A. Or a paint job. Q. A big job? A. Yes. Q. The matter of ordinary repairs was up to you? A. That is right." During the time she was manager there were no repairs on the elevator and she had never inspected it. When she testified in her own behalf and as a defense witness she stated that after Giles fell she knew the uprights were loose because she "had the boys repair them." Otherwise she had never inspected

the uprights or the bar, had no actual knowledge of their condition and had required no repairs on them during her managership. Under these circumstances and in view of her limited control over the premises and especially as to the described conditions it was for the jury to say whether she had breached her duty to the respondent in the particulars complained of since she directed him to the vicinity of the elevator, its uprights and the bar. 2 Restatement, Agency, Sec. 355; 2 Am. Jur., p. 264; Stith v. J. J. Newberry Co., supra; Hagerty v. Montana Ore Purchasing Co., 38 Mont. 69. Since it was improper for the court to direct a verdict in favor of Miss Keltner it was not error to grant the respondent a new trial as to her.

The judgment sustaining both the motion to set aside the nonsuit and the motion for a new trial is affirmed and the cause is remanded. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.