Anna EDWARDS, Plaintiff-Respondent,

v.

E. B. MURRAY & COMPANY, Inc., Defendant-Appellant.

No. 22620.

Kansas City Court of Appeals.

Missouri.

Oct. 7, 1957.

Donald G. Stubbs, Tom J. Stubbs, Stubbs, McKenzie, Williams & Merrick, Kansas City, for appellant.

Ben W. Swofford, Robert A. Schroeder, John C. Milholland, and Paul E. Vardeman, Jr., Kansas City, for respondent.

CAVE, Judge.

This is an appeal from the Circuit Court of Jackson County, by the defendant, from a verdict and judgment against it in the sum of $7,500 for damages for personal injuries to the plaintiff. This court has jurisdiction. Art. V., Sections 3 and 13, Const.1945, V.A.M.S.

The action was originally commenced by plaintiff against the Young Women's Christian Association, a charitable organization, and E. B. Murray & Company, Inc., a corporation, the present appellant. The suit was for damages for injuries sustained as the result of a fall in the lobby of a building owned by the YWCA. At the close of plaintiff's evidence, the plaintiff voluntarily dismissed, without prejudice, as to the defendant YWCA, and the cause continued against Murray &

Company, resulting in the aforesaid verdict and judgment.

Because of the points presented on appeal, it is unnecessary to state the evidence in detail. The YWCA owned a downtown office building located at 1020 McGee Street in Kansas City; the building was occupied in part by the offices of the YWCA, and the remainder of office space was rented by the YWCA to commercial tenants who paid it rent. On the first floor was a lobby, approximately 40 feet by 18 feet, which was used by the tenants, their employees and customers; the floor was covered with asphalt tile; and a person entering the building would walk diagonally across the lobby to get to the elevator which would take him to the various offices on the upper floors.

On June 13, 1955, the plaintiff crossed the lobby on her way to the office of one of the tenants. She was a greeting card saleswoman and it was her practice to obtain the cards from the Hye-Quality Card Company, with offices on one of the upper floors. After making her purchase, she returned to the lobby and in walking toward the street entrance she slipped and fell, receiving severe injuries. Her evidence was to the effect that at the place where she fell, there was a heavy coating of wax and a milky substance which caused her to fall. The appellant does not contend that the evidence is insufficient to make a submissible case, or that the verdict is excessive, consequently we need not detail the conflicting testimony on those issues.

The Murray Company is a building management company and had a contractual relationship with the YWCA to manage and maintain its building. The contract is not in evidence, but it is admitted that Murray Company was to supervise the building, make repairs, if necessary, and clean and maintain the lobby, hallways and other floors; that it did clean, wax and polish the lobby floor; and that the lobby was a common area in the building, available to the use of all the tenants and to all other persons entering or leaving the building.

Appellant's first contention is that plaintiff's Instruction No. 1 was prejudicially erroneous because it failed to require a finding that plaintiff had *no knowledge of the condition of the floor* in time to have avoided the injury.

In substance, the instruction stated that if the jury found from the evidence that the plaintiff was in the YWCA building as a customer of a tenant thereat, it was defendant's (Murray Company's) duty to exercise ordinary care to keep said premises, including the floor of the lobby, in a reasonably safe condition for use; that defendant, through its agents and servants had waxed the floor in an uneven manner and had caused and permitted a thick deposit of floor wax to accumulate at the spot where plaintiff fell; that by reason thereof, the floor was not reasonably safe; that plaintiff was exercising due care for her own safety; that defendant was negligent in waxing the floor in an uneven manner by leaving a thick deposit of wax on the floor; that plaintiff was not warned of the presence of said condition; and as a direct result of defendant's negligence, she fell and was injured, then the verdict should be for the plaintiff.

As stated, defendant contends that this instruction is erroneous because it does not require the jury to find "that plaintiff had no knowledge of the dangerous condition complained of". The basis of this contention is that the legal relationship of the plaintiff to Murray Company was that of a *business-invitee;* and that an instruction defining a defendant's liability where such a relationship exists, must require the jury to find, among other things, that the plaintiff "had no knowledge of the dangerous condition". In support of this contention appellant cites Murray v. D'Oench Co., 347 Mo. 365, 147 S.W.2d 623; Daggs v.

Patsos, Mo.App., 260 S.W.2d 794; and Schwartz v. S. S. Kresge Co., 238 Mo.App. 1165, 185 S.W.2d 37.

However, the plaintiff contends that the defendant has misconstrued the applicable rule of law; that under the facts in this case, the law governing the relationship of landlord tenant-invitee applies; and that "lack of knowledge of the danger" was not an essential element of plaintiff's right to recover. Citing: Lambert v. Jones, 339 Mo. 677, 98 S.W.2d 752; Giles v. Moundridge Milling Co., 351 Mo. 568, 173 S.W.2d 745; Darlington v. Railway Exchange Building, Inc., 353 Mo. 569, 183 S.W.2d 101; Duff v. Eichler, 336, Mo. 1164, 82 S.W.2d 881; O'Neill v. Sherill, Mo.App., 254 S.W.2d 263; Coplen v. Zimmerman, Mo.Sup., 271 S.W.2d 513; Murray v. D'Oench Co., supra; Daggs v. Patsos Mo. App.,supra; Schwartz v. S. S. Kresge Co., supra.

■ We think it is clear from the evidence that the Murray Company was the agent of the YWCA, the owner of the building, and was in control of the building for the purpose of maintaining and keeping it in a reasonably safe condition for the users thereof. The liability of an agent, in control of his principal's premises, or charged with a specific responsibility concerning such premises, is so fully and clearly decided in Giles v. Moundridge Milling Co., 351 Mo. 568, 173 S.W.2d 745, 751, that we need not elaborate thereon. Insofar as its application to the facts in the instant case, the substance and effect of the rule is that an agent of the owner should be held responsible for injuries caused by the condition of premises in the possession or under the control of the agent where the condition is one for which he is responsible and the injury is such as he would be liable for if he were controlling the premises on his own account. "The force of the rule is usually apparent and applicable to instances of real estate companies managing property for owners and it is sought to fasten the owner's liability

on the managing company". (173 S.W.2d 751)

■ Defendant seeks to distinguish this case on the theory that it was an independent contractor, not an agent, and says in its brief that the court (in the case supra), quoted with approval from Section 387 of the Restatement of Torts to the effect that, according to the brief, "An independent contractor in charge of land is subject to the same liability as though he were the possessor of the land". However, the correct quotation reads, "An independent contractor *or servant* in charge of land is subject to the same liability as though he were the possessor of the land". Thus it makes no difference whether defendant was an independent contractor or an agent. It owed plaintiff the same duty as did the owner.

■ The vital question is, what duty did the defendant owe the plaintiff? She was not a *business invitee* of either the owner or the agent. She was an invitee of a tenant of the landlord (owner, YW CA), and was injured in an area (the lobby) reserved for use by all persons properly entering the building; and it was defendant's duty to keep that area in a reasonably safe condition. We think the defendant owed to plaintiff, as an invitee of the tenant, the duty to exercise reasonable care to maintain that portion of the premises reserved for the common use of the tenants and their invitees in a reasonably safe condition; and that the law governing *landlord tenant-invitee* cases, not business invitees, is applicable. The reason and theory of the distinction between the applicable rules in the two classes of cases are ably discussed in O'Neill v. Sherill, 254 S.W.2d 263, 267.

■ In Coplen v. Zimmerman, Mo.Sup., 271 S.W.2d 513, 517, the court discussed the distinction in the rules applicable to *business invitees* and *landlord* and *tenant-invitee* cases, and said: "As against the owner, the tenant's knowledge of a defect in the premises, or against a tenant in

possession and control, his invitee's knowledge, is of force only in so far as it bears upon the plaintiff's contributory negligence * * *. The tenant and his invitee may have some knowledge of a defective or hazardous condition in the premises and nevertheless use it, providing due care is exercised in view of the hazard. * * * In view of these rules and the facts and circumstances of this record instruction one was not prejudicially erroneous in failing to require the additional finding that plaintiff had no knowledge of the dangerous condition in time to have avoided injury to himself". Citing cases. So in the instant case, we hold that plaintiff's instruction No. 1 was not erroneous for failing to require the jury to find that plaintiff had no knowledge of the dangerous condition of the floor.

There were instructions submitting the issue of contributory negligence.

It should be noted that the supreme court in Coplen v. Zimmerman, supra (271 S.W.2d 516), cast some doubt on the validity of the holdings in Schwartz v. S. S. Kresge Co., supra, and Daggs v. Patsos, supra. Both of those cases hold that in a *business invitee* suit plaintiff's principal instruction should require the jury to find that plaintiff had no knowledge of the dangerous condition. However, we need not pursue that question further under the facts and issues in this case.

■ Defendant next complains that the court erred in giving instruction No. 5–A requested by plaintiff. This was a burden of proof instruction as to the issue of contributory negligence. The sentence complained of reads: "The court ˙instructs the jury that the defendant in this case has charged the plaintiff with the failure to use the *highest degree of care* for her own safety and thereby directly contributed to cause her own injury, if any, as submitted in other instructions. * * *" (Italics supplied.) Of course, the correct measure of the duty of the defendant and plaintiff was the exercise of *ordinary care*.

The instruction places a greater burden on the plaintiff than the law requires, and in this respect was advantageous to the defendant. The error being in favor of the defendant, it is in no position to complain. Wells v. City of Jefferson, 345 Mo. 239, 132 S.W.2d 1006, 1009; Mahan v. Baile, 358 Mo. 625, 216 S.W.2d 92, 95. For an array of cases on this question, see Key No. 490 under Section 512. 160 RSMo 1949, V.A.M.S.

■ However, the defendant argues that since the clause "highest degree of care" was used in the instruction, such clause should have been defined. That would only add to any confusion that might exist or result from the use of the expression in the instruction. The degree of care of both the plaintiff and defendant as set out in all other instructions was that of "ordinary care", which was properly defined in Instruction No. 3. Defendant does not point out the manner of prejudice by the mistaken use of the clause, and we can visualize none. There is no merit in this contention.

■ Defendant's next contention is that the court erred in unduly restricting the closing argument of his counsel. There was evidence that there were between 112 and 120 employees working in the various offices in the YWCA building. In his argument, counsel stated that if there were 112 employees working in the building, and if there were 250 working days in a year, there would be 54,000 people crossing the lobby floor during the year. The court sustained an objection to this line of argument. There was no statement made to the court relative to the purpose of the argument. In the brief it is now contended that what counsel had in mind was that it was not reasonable to believe that the defendant would maintain the floor in the very slippery and dangerous condition that the plaintiff said it was, considering the number of people who would use it daily. The inference could also be drawn from the argument that if

**708** ▰ ▰▰▰▰▰▰▰

the floor had been kept in such a danger- ous condition there would or should be evi- dence of other persons falling. This, of course, would be improper.

The rule is that a trial judge should be allowed large discretion in permitting or restraining the argument of counsel and his rulings will generally be deferred to on appeal. Satterfield v. Southern Railway Co., Mo.App., 287 S.W.2d 395, 400. We are unwilling to say that the court com- mitted prejudicial error in sustaining the objection to the argument, especially when there was no explanation made to the court of the purpose of that line of argument, and inferences to be drawn therefrom.

▰▰▰ Defendant's last contention is that the court erred in permitting plaintiff's doctor to testify to the "history" given him by plaintiff regarding *past events*. Plain- tiff's regular physician sent her to Dr. Mc- Canse, who is a specialist, for treatment, and he examined her for that purpose. He was not making an examination for the purpose of testifying.

Plaintiff was injured on June 13, 1955, and was sent to Dr. McCanse on June 28th. He made a thorough examination of plain- tiff, including X-rays, and treated her at different times during the next 16 months. From such examinations and treatments, he found that plaintiff had suffered a com- pression fracture of the ninth thoracic vertebra, and other less serious injuries.

At the beginning of the doctor's testi- mony he was asked, "Q. Doctor, did she give you a history of having fallen on June 13, 1955?" Defendant objected to any statements made by plaintiff respecting "past events", and the objection was over- ruled. The doctor answered, "When I saw Mrs. Edwards on June 28, 1955, she told me that she had slipped and fallen on June 13, 1955, so that her back and right arm were injured". There was no motion to strike the answer or any part thereof. The effect of the question is, did plaintiff tell him that she had fallen on June 13th.

In its brief defendant admits, "It was not disputed that the plaintiff had fallen on the date mentioned". Consequently, the *question* as asked was not objectionable. The rule is that if the question or answer is confined to facts already established by competent evidence or of facts not con- tested or disputed, then there is no error in permitting the question or answer. Huffman v. Terminal R. Ass'n, Mo., 281 S.W.2d 863, 871; Lesch v. Terminal R. Ass'n, Mo.Sup., 258 S.W.2d 686, 691; Oes- terle v. Kroger Grocery & Baking Co., Mo. Sup., 141 S.W.2d 780, 782.

▰▰▰ Furthermore, some inquiry by the physician of a patient as to the *cause* may be proper for intelligent treatment. Lesch v. Terminal R. Ass'n, supra (258 S.W. 2d 691). This, however, does not ex- tend to a narration of the facts attending the injury. Evans v. Missouri Pacific R. Co., 342 Mo. 420, 116 S.W.2d 8, 11. There was no such narration in the instant case.

The defendant also refers to bits of evidence given by Dr. McCanse as fol- lows: "*At that time* (last examination Oct. 1955) she continued to have the same gen- eral complaints that she had over some months previous to that * * * she continued to complain of occasional head- aches and pain in the neck. * * * Along with her complaints of discomfort in the back she had complained rather bit- terly of headaches during the early months she was undergoing treatment * * *". The record discloses that Dr. McCanse had examined and prescribed treatment for plaintiff 13 times during a 16 months' period, and that she had taken 33 therapy treatments at his office during that period; and that his last examination was made Oct. 13, 1955, about two weeks before trial. The question which prompted the above testimony was, "Q. Could you re- late to the jury your findings *at that time*?" There was no objection to the question or the testimony given thereto. Furthermore, it is clear that the doctor was relating

complaints *present* at the time he was making an examination.

The rule is that a doctor may testify as to present symptoms or complaints of a patient and of his observations from his examinations, and, in giving his opinion, may testify not only as to what he observed, but also as to what the patient told him about present symptoms; but he may not give statements of patient as to past physical conditions. Holmes v. Terminal R. Ass'n, 363 Mo. 1178, 257 S.W.2d 922, 926; Cruce v. Gulf, M. & O. R. Co., 361 Mo. 1138, 238 S.W.2d 674. The doctor's testimony did not violate this rule. When his testimony is read as a whole, it is clear that the doctor was relating the complaints of the plaintiff at the various times he examined her; not complaints of conditions existing prior to the time he saw her. To illustrate, during the cross examination, defendant's counsel asked the doctor if plaintiff had told of rib injuries she had received in a prior accident and he replied she had not.

Finding no reversible error, the judgment is affirmed.

All concur.

MAUGHMER, C., not participating.