**PAVYER PRINTING MACHINE WORKS, a Corporation, Plaintiff-Respondent,**

v.

**SOUTH SIDE ROOFING COMPANY, Inc., a Corporation, Rubye M. Hartman, Alvin R. Miller, M.D., and Bernard H. Miller, d/b/a RAB Realty Company, Defendants-Appellants,**

and

**Clarence M. Turley, Inc., a Corporation, Defendant-Appellant.**

**Nos. 32925, 32926.**

St. Louis Court of Appeals.

Missouri.

Sept. 16, 1969.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 14, 1969.

---

Evans & Dixon, St. Louis, Wangelin & Friedewald, Poplar Bluff, Lewis, Rice, Tucker, Allen & Chubb, W. J. Taylor, Jr., St. Louis, for defendants-appellants.

Biggs, Hensley, Curtis & Biggs, F. A. Casserly, St. Louis, for plaintiff-respondent.

DOWD, Judge.

This is an appeal by defendants Rubye M. Hartman, Alvin R. Miller, M.D., and Bernard H. Miller, d/b/a RAB Realty Company (herein referred to as RAB) and defendant Clarence M. Turley, Inc., a corporation (herein referred to as Turley) from a judgment entered on a jury verdict for plaintiff for $3,382.00. Plaintiff alleged it sustained property damages due to a leaky roof covering the premises leased by plaintiff from RAB. The jury found in favor of defendant South Side Roofing Company (herein referred to as South Side) and plaintiff does not appeal from that part of the judgment.

Plaintiff's petition is in three counts, one count against each of the defendants. Count I against RAB is based on a breach of contract for failure to make repairs to the roof of the building leased to plaintiff as agreed in the lease. Count II is against South Side for failure to repair the roof in accordance with a contract between defendant South Side and defendant RAB. Count III is a negligence action against defendant Turley for a breach of a duty allegedly owed to plaintiff to effect repairs to the roof.

Plaintiff was forced to vacate its premises on Broadway by October 31, 1964 because the property was acquired by the State for the construction of a bridge and became interested in leasing property located at 3318 Washington Avenue, St. Louis, Missouri. This property is owned by RAB. The owners were represented by Walter M. Hartman, who is related to them by marriage. Hartman lives in Poplar Bluff, Missouri. About in May, 1964 Hartman gave a listing to Turley to sell or rent the property. Thereafter Clarence M. Turley, Jr., a vice-president of Turley, Inc., was asked by George Pettus of the Pettus Realty Company, who was representing plaintiff, if this RAB property could be leased. Turley contacted Hartman who said RAB was willing to lease the property.

Pettus submitted plaintiff's application for a 5-year lease dated September 9, 1964 to Turley. This application provided for the making of certain repairs by the owners by October 15, 1964 and the lease to commence on October 15, 1964. Negotiations between Turley and Pettus regarding the terms of the lease resulted in a lease which was dated October 14, 1964 and which was to commence November 1, 1964.

RAB was required by the lease to cause Shulman Brothers to make certain repairs which are not involved here. The lease authorized Alex Walther, plaintiff's president, to supervise the execution of the Shulman contract to insure that the contract was completed to the satisfaction of plaintiff. Hartman had authorized Turley to obtain a proposal for these repairs. Turley read the Shulman Brothers' proposal over the phone to Hartman who then authorized Turley to execute the contract as agent for RAB.

The lease also provided: "Lessor agrees at its own expense to place the roof of said building into satisfactory condition by October 15, 1964."

Hartman asked Turley to recommend a roofer and to obtain a bid for the repair of the roof. Turley sent him two bids from South Side, one dated October 8, 1964, the other dated October 13, 1964. Hartman checked the bids with roofers in Poplar Bluff and then signed the

October 8th bid on behalf of RAB. On October 14, 1964, Hartman executed the lease as agent for RAB and mailed it and the October 8th contract with South Side back to Turley a few days thereafter.

On October 19, 1964, Turley mailed a copy of the lease to plaintiff with a transmittal letter (plaintiff's exhibit 3) stating that the lease was delivered on the following conditions: "* * * 2. That you will immediately present to the undersigned or the lessor executed copies of the minutes of your corporation authorizing the corporation to enter into this lease. 3. That you will have seal of the corporation affixed to the lease transmitted herewith and at a future date exchange this copy * * *." The letter also stated that he was sending that same date a signed contract to the South Side Roofing Company for the installation of a new roof in compliance with the lease and that Shulman Brothers Construction Company was being notified to commence repair work immediately. Turley also advised plaintiff by this letter: "Should any of the above conditions be unacceptable to you please notify the undersigned immediately so that the work may be halted." The letter was signed by Turley as agent for RAB.

The lease authorized plaintiff to move its machinery into the premises during October of 1964. On October 8, 1964, plaintiff started moving into the premises and had completed the moving by October 31, 1964. When plaintiff moved in Walther, plaintiff's president, knew that the roof was in bad condition and had not been repaired. To protect the equipment that was moved in a covering was placed over it and other equipment stored under a wooden platform. In the area which Walther believed to be dry, the equipment was not protected.

Leakage from the roof occurred on November 6 or 7 and Walther telephoned this information to Turley who notified South Side of the leaking roof. Turley asked South Side when the roof would be repaired. Walther discovered rain damage to plaintiff's equipment when he arrived for work on Monday, November 16, 1964. Plaster had fallen in and water was all over the floor. Walther called Turley on November 16, 1964 and South Side started the roof repairs on November 17, 1964. Because of other work and wet weather South Side had planned to start work on this roof on November 16, 1964.

Walter M. Hartman, who was called as plaintiff's witness, testified in substance as follows: Turley never had charge of the premises; did not manage the property or collect rent or perform any repair work on this property. Turley was employed solely for the sale or rental of the property and had no authority "to go out and get the work (repair work by Shulman) done." Hartman agreed to the Shulman contract and to expedite the matter asked Turley to sign as agent for RAB. The contract with South Side for the roof repairs was signed by Hartman. Turley's part was to recommend a roofer and forward bids to Hartman. After the lease was executed and the contracts were in the hands of the construction men or roofers, Turley's work for RAB was completed except for payment of his bill.

We will consider Turley's appeal first. Defendant Turley's principal contention is that the trial court erred in denying its motions for a directed verdict at the close of plaintiff's evidence and at the close of all the evidence because there is no evidence to support a finding that defendant Turley had a duty to plaintiff to effect repairs to the roof.

■ In determining whether or not the trial court erred in denying defendant Turley's motions for a directed verdict, it is the duty of the appellate court to consider only the evidence most favorable to plaintiff and the reasonable inferences to be drawn therefrom and to disregard the evidence of the defendant unless it aids plaintiff's case.

In discussing the liability of an agent the court in Giles v. Moundridge Milling Co., 351 Mo. 568, 173 S.W.2d 745, l.c. 751, stated that when an agent did not have complete control of the premises,

> " * * * the test is and should be whether he has breached his legal duty or been negligent with respect to something over which he did have control. 'If an agent has only a limited control over land or chattels he is subject to liability only to the extent that he is authorized to exercise such control. Thus, an agent who is employed to have general oversight over a building, but who is not authorized to cure defects in it, is under no liability to third persons, except so far as by his conduct he causes them to be in its vicinity.' 2 Restatement, Agency, p. 780. * * * "

In other words, an agent is not liable along with the owner for some condition over which he has no control and with respect to which he has no duty. Lambert v. Jones, 339 Mo. 677, 98 S.W.2d 752. To the same effect see Peterson v. Brune, Mo., 273 S.W.2d 278; Ryan v. Standard Oil Co. of Indiana, Mo.App., 144 S.W.2d 170; Blind v. Saks Fifth Ave., Inc., Mo. App., 349 S.W.2d 425.

We conclude that the trial court erred in denying defendant Turley's motions for a directed verdict. The evidence adduced by plaintiff showed that Turley had no control over these premises. Nor is there any evidence from which a reasonable inference can be drawn that Turley had any authority or control over the roof repairs. Turley did not manage the property, was not in charge of the property, did not collect the rents and was employed by RAB solely for the sale or rental of the property. Turley's lack of control and authority over these premises and the repairs is evidenced by the Shulman contract which specifically gave plaintiff the right to supervise the repairs to its satisfaction. Turley's part in the repairs of the roof consisted of recommending a roofer to Hartman, agent for the owners; notifying South Side of the leakage of the roof on November 6th or 7th; and forwarding the bids for the repairs of the roof. Hartman approved the contract after checking with roofers in Poplar Bluff. This contract with South Side for the roof repairs was executed by Hartman as agent for the owners. We have carefully examined plaintiff's cited authorities and find them not pertinent. Some of plaintiff's authorities involved the liability of a volunteer. This is not applicable here. There is no evidence that Turley assumed the role of a volunteer.

Defendant RAB's principal contentions are that the trial court erred in denying their motion for a directed verdict at the end of all the evidence for the following reasons: (1) There was no contract with plaintiff to repair the roof by October 15, 1964 since delivery of the contract was after November 6, 1964 in that the lease was not signed by plaintiff's secretary; (2) Plaintiff was guilty of contributory negligence as a matter of law since it knew of the defective roof and took no means to protect its property. Defendant RAB also contends that the court erred in giving Instruction No. 6 because the instruction did not properly state the law and improperly emphasized the date of October 15.

We decide against defendant RAB's contention that the plaintiff was contributorily negligent as a matter of law. The evidence here showed that the plaintiff was required to vacate its former premises by October 31, 1964 and while the plaintiff did know that the premises had a defective roof it did take measures to protect its property by covering its equipment and by placing its equipment under a wooden platform. We are convinced that contributory negligence was a matter for the jury.

We decide against defendant RAB's contention that there was no delivery of the lease until after November

6 because it had not been signed by the defendant's secretary. The power of a corporate officer, like that of any other agent, to bind his corporation in contract rests either upon his actual authority or upon his apparent authority. Parks v. Midland Ford Tractor Co., Mo.App., 416 S.W.2d 22, 26. The lease was executed by Alex Walther, president of plaintiff corporation. He had actual authority to enter into this contract based upon plaintiff's exhibit 4 which is a certified copy of a resolution adopted on October 7, 1964 at a special meeting of the Board of Directors of plaintiff corporation authorizing the execution of this lease. There is no requirement that this lease be signed by the secretary.

We agree that it was error for the court to give Instruction No. 6 which is set out as follows:

"INSTRUCTION NO. 6.

"Your verdict must be for the plaintiff and. against defendants Rubye M. Hartman, Alvin R. Miller, M.D. and Bernard H. Miller d/b/a RAB Realty Company, if you believe:

"FIRST, plaintiff and said defendants entered into a lease dated October 14, 1964, wherein said defendants agreed at their own expense to place the roof of said building described in said lease into a satisfactory condition by October 15, 1964;

"SECOND, that plaintiff has fully complied with all his obligations as lessee under said lease;

"THIRD, that said defendants did not place the roof of said building into a satisfactory condition by October 15, 1964, or a reasonable time thereafter; and

"FOURTH, as a direct result of such failure plaintiff sustained damages.

"Unless you believe plaintiff is not entitled to recover by reason of Instruction Number 8."

This instruction is misleading and prejudicial to the defendant RAB. The effective date of the lease as shown by the evidence and conceded by the plaintiff's brief is October 20. This lease which was for a longer period than one year was required to be in writing and signed by. the party to be charged therewith. Section 432.010 RSMo 1959, V.A.M. S. A lease is not executed until it is delivered; delivery is the final important act in execution. Clifford Cigar Co. v. Mahoning Inv. Co., Mo.App., 186 S.W. 1123, 1124. The lease did not therefore become binding on the parties until delivery. Krall v. Light, 240 Mo.App. 480, 210 S.W.2d 739, 745. The evidence shows and it is admitted by plaintiff's brief that the lease was not signed by RAB until October 14, mailed to plaintiff on October 19, and received by plaintiff on October 20. Therefore, the lease was not binding and effective until October 20. The agreement to repair the roof being part of the lease was not binding until October 20. The date of October 15, as set out in this instruction and in the lease had already expired when delivery of the lease was had. Submitting the date of October 15 was confusing and erroneous since RAB's only obligation was to repair the roof within a reasonable time after October 20. That time element and the alleged damages were the only disputed ultimate facts. The instruction improperly emphasized the October 15, 1964 date for completion of the roof repairs. It failed to pass the MAI test which is to follow the substantive law in hypothesizing the ultimate disputed facts. Epps v. Ragsdale, Mo.App., 429 S.W.2d 798 [9].

Attention is also directed to the erroneous omission of the conjunction "and" between paragraphs First and Second of this instruction which is plaintiff's verdict director against RAB. Slyman v. Grant-

ello, Mo.App., 429 S.W.2d 282, 283; Moore v. Huff, Mo.App., 429 S.W.2d 1.

The judgment against defendant Turley is reversed. The judgment against RAB is reversed and the cause against RAB remanded for a new trial.

WOLFE, P. J., concurs.

BRADY, J., not participating.