ing the nature and extent of his injuries and all the factors, the verdict of $18,359 is not so plainly excessive as to compel a remittitur. Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S.W.2d 35; Hill v. Montgomery, 352 Mo. 147, 176 S.W. 2d 284; Summa v. Morgan Real Estate Co., 350 Mo. 205, 165 S.W.2d 390; Davidson v. Rodgers, Mo., 258 S.W.2d 648. Accordingly the judgment is affirmed.

WESTHUES and BOHLING, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

LEEDY, Acting P. J., ELLISON, J., and BENNICK and BROADDUS, Special Judges, concur.

Winright PETERSON, Plaintiff-Respondent,

v.

Paul BRUNE and Anna Brune, doing business as Brune Realty Company, and Paul F. Brune, Defendants-Appellants.

No. 44298.

Supreme Court of Missouri.

Division No. 1.

Nov. 8, 1954.

Motion for Rehearing or to Transfer to Court en Banc Denied Dec. 13, 1954.

L. A. Robertson, Alexander & Robertson, Ernest E. Baker, St. Louis, for appellants.

Morris A. Shenker, William R. O'Toole, St. Louis, for respondent.

COIL, Commissioner.

Plaintiff-respondent had verdict and judgment for $1,263 in his action for $15,000 damages for alleged personal injuries, sustained as a result of having fallen from a front porch by reason of the alleged defective condition of one of the banisters. The trial court sustained plaintiff's motion for new trial on the issue of damages only, on the ground that the amount of the verdict was inadequate, and overruled the motions of defendants to enter judgments for them and for new trials.

The defendants contend that the trial court erred in refusing to direct verdicts for them at the close of all the evidence and in giving and refusing instructions.

The evidence showed, without dispute that the owners of the involved property were Paul F. Brune and Anna Brune, his wife. Strangely enough, however, plaintiff did not sue Anna Brune as an owner. Anna Brune's liability was averred on the sole ground that she was a partner along with her husband and others doing business as Brune Realty Company, which partnership, it was alleged, had the full control and management of, and obligation to maintain, the premises in question. For convenience, we shall consider last the question involving Paul and Anna Brune as partners. We first consider the liability of Paul Brune as owner.

The property involved was a 4-family flat on the south side of east and west LaSalle Street in St. Louis. Entrances to two of the flats were at the front. The entrances to the other two flats, with which we are not concerned, were in the rear. A wood porch, about 15' 10" long and 4½' wide, extended across the front of the brick building so that one porch served as the front porch for two flats. There were five wood steps (excluding the floor of the porch) about 7' wide, leading from the sidewalk to the middle of the porch. On the porch floor, at places about even with the respective ends of the steps, were banisters or railings running to posts at the east and west ends, respectively, of the porch, and then southwardly to posts against the front

wall of the building. These banisters consisted of three rails, the top rail of which, in each instance, was a two-by-four toenailed into the sides of the respective posts. The two lower rails, between the floor of the porch and the top rail, are not here involved. The particular top rail here involved was about 38 or 40 inches above the porch floor, was attached to the post at the east edge of the steps, and extended from that post 40" eastwardly to another post at the northeast corner of the porch.

Plaintiff lived in the east flat which he had rented from defendant, Paul F. Brune, about 12 years prior to the accident. On May 5, 1951, plaintiff returned to his flat from a grocery store. A friend had accompanied him to the bottom of the front steps. Plaintiff, carrying a paper sack of groceries in his left arm, ascended the steps and was about to open his front door when the friend, still on the sidewalk, called to plaintiff for the purpose of further conversation. Plaintiff turned to his left, took one or two steps forward (north) and placed his right hand on the railing in question. The railing "fell out" and plaintiff fell 4' 8" to the ground immediately in front of the railing. He sustained a broken wrist and other injuries, the nature and extent of which are not here involved. Other evidence will be discussed at appropriate places in the course of this opinion.

One of the reasons for defendants' contention that verdicts should have been directed is that plaintiff failed to sustain his burden to prove that "the defendants retained control of the porch for the use of their several tenants". Defendants do not dispute the established rule that a landlord is under a duty to exercise ordinary care to keep the portions of the premises which he retains in his control in a reasonably safe condition for the use intended and is liable for damages for personal injuries resulting from his failure to perform that duty. Schneider v. Dubinsky Realty Co., 344 Mo. 654, 664 [6], 127 S.W. 2d 691, 696 [15]; Gray v. Pearline, 328 Mo. 1192, 1198, 43 S.W.2d 802, 804 [2]; Marentette v. Luechtefeld, Mo.App., 268 S.W.2d

44, 46 [1, 2]. It is further well established that unless a landlord has expressly retained control of a certain portion of the rented premises, the fact that he did retain control may be shown by other facts and circumstances in evidence. One method to prove retention of control is to show that the portion of the premises involved was so constructed as to be used by, or subject to be used by, the landlord and another tenant or two or more tenants. Gray v. Pearline, supra, 43 S.W.2d 805 [4].

The ultimate question, of course, is whether the landlord did retain control of the particular portion of the premises under consideration. This, because the foundation of the landlord's duty is based upon his retention of control. Defendants concede that retention of control of a portion of the premises may be implied from the fact of common user; but they contend that, when implied retention of control by reason of common user is relied upon, there must be a showing of *necessity* for common user of the particular part of the premises in question. This contention is based upon the assertion that retention of control of common approaches is implied because a landlord, when he rents premises, which the tenant may enjoy only by using common approaches, is held to have granted an easement in such approaches to the tenants who must of necessity use in common the approaches, halls, and the like. See: Roman v. King, 289 Mo. 641, 652, 233 S.W. 161, 164, 25 A.L.R. 1263. Defendants say that, therefore, an implied easement involves the element of necessity. From which premise, as we understand, defendants contend that; in order for the jury to have found that the landlord retained control of the instant porch, it was essential that plaintiff show that (of necessity) he had to use all of the steps and all of the porch in order to gain ingress and egress to his flat.

■ All the evidence showed that there was only *one* set of steps leading to only *one* porch, and that that set of steps and that porch were used by the two front entrance tenants. Defendants, nevertheless, argue that because the other tenant could (and usually did) use the west side of the steps and the west side of the porch and plaintiff could and did use the east side of the steps and the east side of the porch, in entering and leaving their respective flats, it must follow that defendants did not retain control of the one porch. We think defendants' position is untenable. This, because it ignores the fact that the basic question of whether the porch was a common porch used by, or subject to being used by, two or more tenants, depends upon whether there was *one* porch or *two* porches. If there was one porch which had to be used by two tenants to gain access to their flats, it must follow that it was a common porch. As noted, all the evidence was that there was only one porch. Neither the steps nor the porch were constructed so as to indicate that two porches rather than one existed. There was no division rail dividing the east from the west half of the steps or the porch. Cf. Gray v. Pearline, supra, 43 S.W.2d 805 [3]. Consequently, the physical fact, as disclosed by defendants' picture portraying the steps and porch, was that there was only one porch involved, and the evidence was that this porch had to be used by both tenants to gain access to their flats. The fact, standing alone, that plaintiff could and did enter his flat by using one side of the common steps and one side of the common porch did not tend to show that the steps and porch were not common steps and porch. Thus, in our view of this case, we need not determine whether, and to what extent, a "necessity" to use must always be shown. This, because, as noted, necessity was shown in this case. We think defendants have confused "necessity to use a common porch" with "necessity to use only a portion of a common porch."

■ As a corollary to their contention just considered, defendants contend further that plaintiff's instructions 1 and 2 were erroneous because they hypothesized the issue of retention of control by requiring the jury to find "that said porch was used in common by the plaintiff and another tenant at the premises mentioned in the evidence". Defendants say that such a submission gave the jury a "roving commis-

sion" to find retention of control without any "factual guide", and that the element of "necessity" was ignored. While it is true, as we have heretofore noted, that the ultimate question for the jury on this phase of the case was whether defendants had in fact retained control of the porch, and while the instruction submits this issue by requiring only an evidential finding, still we are of the opinion that under the facts in this case a finding by the jury that the porch was in fact used by two of the tenants was sufficient. This, because, as noted, defendants' own evidence (in the form of a picture exhibit portraying the porch), the tacitly conceded fact that the two doors leading from the porch were the only entrances to two flats, and the absence of evidence of any agreement pertaining to the porch, eliminated any real issue in the case as to retention of control by the landlord. So that while, under other evidence, the hypothesis referred to might be insufficient, we hold that it was sufficient in this case.

In connection with this subject, and, in reality, for the same reasons advanced by them for a directed verdict heretofore considered, it is defendants' further contention that the trial court erred in refusing to give defendants' instructions B and C. The trial court properly refused these instructions. Instruction B would have directed a verdict for defendants if the jury found that the portion of the porch upon which plaintiff stood prior to his fall and the handrail immediately in front of that place were not reasonably necessary or convenient for the use of the tenant in the west flat. In other words, the instruction hypothesized defendants' theory that unless a particular portion of a common porch was necessary or convenient for use by more than one tenant, a landlord has not impliedly retained control of the common porch. This theory would mean that the landlord had divided the common porch into imaginary (unspecified) sections, and that no section of the common porch was retained by the landlord unless that particular section was necessarily used by two tenants. What we have said heretofore concerning this theory

suffices to overrule defendants' contention as to the refusal of instruction B.

Instruction C, after preliminary statements which abstractly stated some principles of law involved, directed that if defendant Paul Brune "did not retain control of the east side of the porch and the hand rail mentioned in the evidence at the place plaintiff alleges he fell for the use in common of plaintiff and other of said defendants' tenants in said building", then a verdict should be returned for defendants. The trouble with this instruction is that it encompasses the fallacious theory set forth in instruction B. It is true that unless the landlord retained control of the porch, including its east side and east handrail, plaintiff could not recover. But the instruction by singling out the east side and the east handrail as distinguished from the porch as a whole, would likely cause the jury to believe that they would find for defendant if they found that only plaintiff needed to use the specific portion of the common porch singled out in the instruction. Instruction C does not clearly submit the converse of instructions 1 and 2, and does not otherwise clearly submit the issue as to whether the porch as a whole was used by more than one tenant.

We hold that the trial court did not err in refusing instructions B and C.

■ Another reason assigned by defendants as demonstrating the error of the trial court in failing to direct verdicts for them is that "the evidence does not show that defendants had actual or constructive notice of the alleged defect in time to remedy same before plaintiff's injury". It is, of course, true that before liability for damages may accrue, plaintiff must show that defendants had notice, actual or constructive, of the alleged defect in the common porch which was the proximate cause of plaintiff's injury. 32 Am.Jur., Landlord and Tenant, § 694, p. 571.

■■ Viewing all the evidence and the reasonable inferences therefrom from the standpoint most favorable to plaintiff, giv-

ing plaintiff the benefit of defendants' evidence favorable to plaintiff and not contrary to his own testimony or to the fundamental theory of his case, and disregarding defendants' evidence unfavorable to plaintiff, we are of the opinion that the question of whether defendants had notice of a defect in time to have remedied it was a question for the jury. This conclusion is based upon the facts which the jury reasonably could have found. These are set forth below.

In August or September, 1950 (ten or eleven months prior to plaintiff's fall), one Anderson, a carpenter, who had been in the continuous employ of defendants for 28 years (and two other carpenters employed by Anderson), went to the premises in question at the direction of the defendant, Paul Brune, for the specific purpose of inspecting and repairing the porch. As a result, the porch and the steps leading to it were repaired in certain respects, but no repair was made which affected the instantly involved banister or to the posts to which it was attached. An inspection at that time showed that the wood post at the east edge of the steps was decayed from its top down to the place where the two-by-four railing was toenailed to it. Decay such as existed would have begun at the top of the post and would have spread from the top of the post downwardly. Rain water would flow downwardly on the post into the crevice where the two-by-four was joined to the post. If the visible decay which existed extended to the place where the nails holding the two-by-four to the post were located, the condition would be "dangerous." Defendant, Paul Brune, inspected the porch three or four times a year for the specific purpose of determining its condition. Whether the two-by-four railing, which gave way when plaintiff placed his hand upon it, was sufficiently fastened so as to be reasonably safe depended more upon the condition of the posts to which it was attached than upon the condition of the two-by-four. When the two-by-four was examined after it fell, the nails which had secured it to the post at the east edge of the steps had pulled from the post and were

in the end of the two-by-four, and the post "just looked like it had rotted out."

We think the jury reasonably could find from the foregoing evidence that the landlord and his agent (Anderson) failed to exercise ordinary care in inspecting the condition of the railing and posts in August or September, 1950, and thereafter, in that the visible condition of the part of the post above the two-by-four should have caused the landlord or his agent, under the circumstances, to have determined the condition of the wood immediately below the visibly rotted portion, which was covered by the fastened end of the two-by-four; and that such an inspection would have disclosed that the railing was insufficiently secured by reason of the rotted condition of the wood to which the two-by-four was nailed. The fact, emphasized by defendants, that the particular portion of the post to which the two-by-four railing was attached was not visible on a visual inspection, and therefore was in the nature of a "concealed defect", did not relieve the landlord of the duty to use ordinary care to discover the so-called "concealed defect" and thereafter to repair it, if the part he could see should have constituted notice to him that the decayed and rotted condition of the post extended to the portion of the post covered by the two-by-four. Buchanan v. Wolff, Mo.App., 105 S.W.2d 26, 29 [6]; Bleisch v. Helfrich, Mo.App., 6 S.W.2d 978 [1, 2]; 32 Am.Jur., Landlord and Tenant, § 694, p. 571. We hold that the question of notice was one properly submitted to the jury.

■ Defendants contend that plaintiff's instructions 1 and 2 were erroneous in a respect not heretofore discussed; viz., that they assumed an essential controverted fact. There is no doubt that, as defendants contend, "Instructions should not assume or impliedly assume the existence of disputed essential facts." Osborn v. Chandeysson Elec. Co., Mo.Sup., 248 S.W.2d 657, 664. Defendants say that one of the essential facts which the jury had to find to authorize a verdict for plaintiff was that the defect, if any, which existed was such as to make the porch railing not rea-

sonably safe for the use for which it was intended. They point out that plaintiff's evidence was that he only placed his hand on the railing and that it fell, while defendants' evidence was that plaintiff was sitting and leaning upon the railing at the time it fell. Defendants argue that instructions 1 and 2 (which were identical in so far as the language pertaining to this issue was concerned) assumed that the condition of the railing, as shown by plaintiff's evidence and hypothesized in the instruction, made the railing not reasonably safe for the use intended. The pertinent language of the instruction is: "and that on and prior to May 5, 1951 the top railing and banister of the aforesaid porch * * * were in a decayed, rotted, and insufficiently fastened condition, * * * and * * * that the defendants knew or by the exercise of ordinary care, could have known [thereof] * * *, in time thereafter to have either repaired or remedied said * * * banister, * * * *and that the defendants failed to put the top railing in a reasonably safe condition,* and that in so failing, the defendants were negligent, * * *." (Italics ours.)

■ We think the aforequoted language, standing alone, is subject to the criticism that it impliedly assumed that the railing was not in a reasonably safe condition. However, we are of the opinion that defendants were not prejudiced by that language because of the further requirement of the instruction that, before a verdict could be returned for plaintiff, the jury had to find that "while plaintiff was using said porch and placing his hand on said railing on May 5, 1951, * * * said railing fell or gave way * * *". Thus the instructions, in effect, required the jury to find that the railing was so insecurely fastened that it gave way and caused the plaintiff to fall when plaintiff only placed his hand on it. Such a finding by the jury was, we believe, under the circumstances, tantamount to a finding that the railing was not in a reasonably safe condition. In other words, while the jury was not required to find the conclusion that the banister was not in a "reasonably safe condition", nevertheless the jury was required to find facts which, if true, compelled the conclusion that the condition of the banister was not reasonably safe for the use intended. We hold, therefore, that any implied assumption of an essential controverted fact in one portion of the instruction was rendered harmless because of the facts required to be found by the instruction as a whole.

■ Defendants Paul Brune and Anna Brune, doing business as Brune Realty Company, contend that a verdict should have been directed for them at the close of all the evidence because plaintiff's proof failed to show that there was any duty on them as partners doing business as Brune Realty Company to maintain the premises. Inasmuch as the judgment as to liability must be affirmed against Paul Brune as an owner, we need not concern ourselves with his liability by reason of having been a partner in Brune Realty Company. For, obviously, Paul Brune is only one individual, and there may be only one judgment against Paul Brune as an individual in this case, irrespective of upon how many theories Paul Brune, the individual, may be liable.

Consequently, the only remaining question is whether Anna Brune, the wife of Paul Brune, was liable because she was a partner in Brune Realty Company. We again point out that if Anna Brune had been sued as an owner, no question here would be important as to her additional liability by reason of having been a partner in Brune Realty Company. But, as heretofore noted, a judgment against Anna Brune was sought on the sole basis that she was a partner in the Brune Realty Company, on the theory that the partnership was the agent for Paul Brune, the owner, and, as such agent, had sole management, control, and supervision of the premises as to repairs and maintenance. The evidence was that the premises were rented from Paul Brune; that he, Anna Brune, his wife, his son and daughter-in-law, were, prior to and on May 5, 1951, partners doing business under the name

and style of Brune Realty Company (the son and daughter-in-law were not made defendants); that plaintiff's wife paid the rent during the 12-year period of the tenancy by delivering the money to a young lady at a counter in the office of Brune Realty Company on Chestnut Street in St. Louis; that, in the early spring of 1950, plaintiff's wife made a complaint to the young lady at the counter concerning the porch in question directed to the fact that it was pulling away from the front of the house; that "When I [plaintiff's wife] made the report, they sent somebody out to fix it, and I thought that they would make an inspection of the whole porch and fix it all if necessary, because I didn't know anything about it"; that the young lady at Brune Realty Company office worked for the partnership and received complaints concerning properties which were managed by Brune Realty Company and also complaints concerning the property owned by Paul Brune or by Paul Brune and his wife; that the employees of Brune Realty Company kept a file as to complaints and repairs made on the instant premises; that a rent collector, hired by Brune Realty, would, if necessary, go to the instant premises and collect rents; that at least one of the carpenters heretofore referred to, who had made repairs in 1950 on the porch, was employed both by Paul Brune and Brune Realty Company; that Paul Brune, an owner, was the managing partner of Brune Realty Company. Paul Brune testified that the partnership of Brune Realty Company had no interest in the particular property so far as repairs and maintenance were concerned but that he, as an owner, looked after the repairs and maintenance; that Brune Realty Company managed other property not owned by Paul Brune and his wife; that if a complaint was lodged with Brune Realty Company concerning property which Paul Brune owned, he would get a memorandum of the complaint from employees of Brune Realty Company; and that the partnership, Brune Realty Company, was not an agent for Paul and Anna Brune in any respect relating to repairs and maintenance of property owned by Paul Brune or by Paul Brune and Anna, his wife.

Now it is clear that if Paul Brune, admittedly the managing partner of the partnership, Brune Realty Company, acted in behalf of the partnership as well as for himself as owner in inspecting, repairing, and maintaining the property in question, then Anna Brune was liable for any negligence of which he may have been guilty in failing to exercise ordinary care in maintaining the common porch in reasonably safe condition. Schneider v. Schneider, 347 Mo. 102, 107 [1]; 146 S.W. 2d 584, 587 [1–4]. So the question is whether a jury reasonably could find from the evidence that Paul Brune, an owner of the property and also managing partner of Brune Realty Company, was acting not only on behalf of himself and his wife as owners, but also on behalf of his wife as a member of the partnership, in maintaining the porch. Was there evidence to support the allegations of the petition and the hypotheses of plaintiff's instruction that "the defendants Paul Brune and Anna Brune, doing business as Brune Realty Company, were agents in the renting, repairing and maintenance of said premises, * * * and as such agents had control of the entire premises and had the sole management, control and supervision of said building and the repairs and maintenance thereof for the said owner Paul Brune"? Of course, Paul Brune would be personally liable even though he were not also the owner, but not necessarily because he was the managing partner in Brune Realty Company. His liability would accrue because he had in fact the complete control of the property for the purpose of repairs and maintenance. Lambert v. Jones, 339 Mo. 677, 685, 98 S.W.2d 752, 756 [6]; Giles v. Moundridge Milling Co., 351 Mo. 568, 578, 173 S.W.2d 745, 751 [10–15]; 2 Am.Jur., Agency, § 334, p. 263. But we are not here concerned with Paul Brune's liability. Anna Brune is liable on plaintiff's theory only if Brune Realty Company had control through its managing partner, Paul Brune.

We have examined the evidence and are constrained to the view that it does not justify a reasonable inference contrary to Paul Brune's testimony that Brune Realty Company was not the agent for him and his wife in the control or management of the property other than to collect rents and receive complaints. The jury was at liberty to not believe Paul Brune's conclusion; but the trouble is, there was no evidence from which a contrary inference reasonably could be drawn. The testimony concerning the agency relationship between Paul Brune, owner and Brune Realty Company went no farther than to prove that the Brune Realty Company was agent for the owner only to the extent of collecting rents and receiving complaints. "When an agent does not have complete control of the premises *and it is not sought to fasten the liability of an owner or possessor on him* the test is and should be whether he has breached his legal duty or been negligent with respect to something over which he did have control." (Italics ours.) Giles v. Moundridge Milling Co., supra, 173 S.W.2d 751. Brune Realty Company was the agent and no breach of any legal duty owed by Brune Realty Company to plaintiff by virtue of its duty as agent to collect rents or receive complaints was shown.

Defendants make no contention here on the adequacy of plaintiff's damages.

It follows from all we have said that the judgment against Anna Brune is reversed, that the judgment as to liability against Paul F. Brune is affirmed, and that the portion of the trial court's order granting plaintiff a new trial as to damages only against Paul F. Brune is affirmed.

VAN OSDOL, C., concurs.

LOZIER, C., dissents in part.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.