**Patrick JETT, Respondent,**

v.

**TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a corporation, Appellant.**

**No. 48434.**

Supreme Court of Missouri,

Division No. 2.

April 9, 1962.

As Modified May 14, 1962.

Robert C. Ely, St. Louis, for appellant.

George R. Gerhard, William L. Mason, Jr., St. Louis, for respondent.

LEEDY, Judge.

Action by Patrick Jett against Terminal Railroad Association of St. Louis to recover damages in the sum of $112,285 resulting from personal injuries allegedly sustained by him through Terminal's negligence, and in which separate appeals have been taken

by the parties, respectively; that by Terminal is from the judgment awarding Jett $15,000, and in the other Jett appeals from the order overruling his motion for a new trial on the issue of damages only. The amount in dispute in the latter instance exceeds $15,000, hence appellate jurisdiction is in this court. See Rule 82.14(c), V.A.M.R.

*1* We consider first the appeal of Terminal for the reason that if either the giving of certain of plaintiff's instructions or the refusal of one offered by defendant constituted reversible error, as contended by Terminal, we would not reach the question of inadequacy of the verdict, which is the sole subject matter of plaintiff's appeal.

It is conceded that plaintiff's case as made by the pleadings and proof comes within the doctrine of res ipsa loquitur. It was submitted as such, so in view of the nature of the points we are to consider it will be unnecessary to state the facts in any great detail, it being sufficient to say that plaintiff's evidence was to the effect that he was injured at about 2 A.M., on July 16, 1959, when the automobile in which he was riding as a passenger (occupying the left rear seat) was struck at a grade crossing by a runaway, unattended, unlighted freight car. Penrose Avenue in the City of St. Louis, on which the automobile was proceeding eastwardly, crosses the defendant's tracks at right angles. The freight car, rolling free down a 2% grade in a northwardly direction, struck the right side of the automobile, shoved it down the track for a distance of approximately 67 feet from the point of impact, then off to the side, and then it continued on, rolling a total of three miles before being overtaken and stopped by an engine alerted for that purpose. Plaintiff did not see the railroad car before it struck the automobile.

Defendant's evidence, insofar as it may be pertinent to the first point we are to consider, was to the following effect: The railroad car was loaded with wallboard and was consigned to Central Hardware. On the afternoon preceding the accident, Terminal had undertaken to deliver the freight car to Central Hardware's industrial track, but that track was filled, and by an arrangement with Superior Folding Box Company the car was stored temporarily on its industrial track, so that it could be delivered by Terminal to the consignee the following day, when there would be room on Central Hardware's track. Superior's plant is located at the southwest corner of the railroad crossing, and its industrial track begins at a switch immediately south of Penrose. There is a derail on Superior's industrial track located approximately four car lengths south of Penrose Avenue. Terminal's switching crew placed the freight car on Superior's industrial track at about 1:20 P.M., on the previous day, July 15. It was shoved to a point approximately four feet beyond the derail, and was stopped there. The foreman of the crew, Ledford, testified that he placed a wedge shaped oak block under one wheel of the car and a railroad spike under another. He then pulled the pin of the couplers and the locomotive pulled back. After the locomotive had cleared the derail, Ledford placed the derail on the track, and then the crew went on about their switching operations. Either the oak block or the spike was sufficient to keep the car from rolling. The derail is a heavy metal device attached to the tie and hinged so that it can be raised on and off the rail. If the derail is on the rail, any car moving against it will be derailed, thus stopping it from rolling farther. No other cars were moved onto Superior's track after the movement just described. Ledford's crew is the only crew that worked in the area, and his crew left at 3:30 P.M. Superior's plant superintendent left work at 5:30 or 6:00 P.M., and at that time he checked the derail and it was still on the rail. His company neither sent out nor received any cars that night.

The defense was that the accident was faked, and did not occur as testified to by plaintiff; that the automobile had been placed on the crossing, and the railroad car then caused or permitted to roll free, and that neither plaintiff or the three other supposed

passengers were in the automobile when it was struck and carried down the track. The proof adduced in support of this defense was, of necessity, largely by way of circumstantial evidence, and which, while interesting, is not pertinent to the present inquiry. Taking notice of our own records, however, we know that in a companion case (Simpson v. Terminal R. R. Ass'n of St. Louis, No. 48,687, now under submission in this division, and which involved the claim of another of the supposed passengers) the same defense was interposed, and with success, in that the jury returned a verdict for the defendant.

 The evidence clearly warranted the submission of the hypothesis of exclusive control over the freight car being in the defendant, and this was done by instruction No. 1, which was plaintiff's verdict-directing instruction. Terminal concedes this was proper under the evidence and necessary to a recovery under the res ipsa doctrine. But plaintiff gave another instruction (No. 2) which elaborated on that element as thus submitted, and defendant claims that such instruction (No. 2) is reversibly erroneous. It reads as follows:

"The Court instructs the jury that with reference to Instruction No. 1, the meaning of the requirement in said instruction that the defendant, Terminal Railroad Association, have exclusive control and management of the boxcar mentioned in evidence does not mean, and is not limited to, actual physical control and management, but refers to the right of control and management by defendant at the times mentioned in evidence.

"In this connection, you are further instructed that if you find and believe from the evidence that at the times mentioned in evidence, the defendant, Terminal Railroad Association, had the exclusive right to the control and management of the boxcar in question, the mere possibility that some third person, in no way connected with the defendant, may have tampered with, or altered the condition of, said boxcar so as to make it defective and dangerous to persons. or property does not relieve the defendant of its duty, under the law, to exercise ordinary care to manage, control and maintain said boxcar so that the same should not cause injury to persons or property."

The propriety of the first paragraph is not questioned. Indeed, it is conceded. The vice of the instruction is charged to be in that portion of the second paragraph beginning with the words "the mere possibility that some third person." The challenged language is obviously borrowed from the opinion in Bobbitt v. Salamander, 240 Mo. App. 902, 221 S.W.2d 971, 976, where the question involved was the propriety of only the words set out in the first paragraph of instruction No. 2 in the present case. The contention there was that the instruction made the defendant liable although his automobile was started by some other person unlawfully tampering with it, regardless of the owner's right of control. In answering this argument, and after pointing out that there was no evidence in the case of anyone tampering with the car (which had been parked on a steep incline for eleven hours), the court quoted approvingly the following from 45 C.J. 1214: "However, where it is established that the thing which caused the accident was within the control of defendant, the *possibility* that some third person, who was an intermeddler and in no way connected with defendant, tampered with it so as to make it defective or dangerous does not defeat the application of the (res ipsa loquitur) doctrine."

It will be seen that this statement of a rule of law as there applied to the question of the submissibility of a case under the res ipsa doctrine is now sought to be submitted (with slight adaptation for the purpose) as an instruction for the guidance of the jury. Defendant objects on the ground it is an abstract statement of a rule of law of res ipsa loquitur, and even though it may be technically correct as such, its application is to be found in determining the legal question of submissibility, and it should not be set forth in an instruction because to do so

would be confusing and misleading to the jury.

While it is not necessarily error to give correct abstract instructions or statements unless they are confusing or misleading, and, therefore, prejudicial (Benham v. McCoy, (Mo.) 213 S.W.2d 914, 920), it is also held that the mere fact that a statement or language is found in an opinion of an appellate court does not authorize its inclusion in an abstract instruction to the jury. Detrich v. Mercantile Trust Co., (Mo.) 292 S.W.2d 300, 303–304. The latter case cites approvingly the following from Anderson v. Glascock, (Mo.App.) 271 S.W.2d 243, 248: "There are many expressions used in appellate opinions which are not proper for incorporation in instructions to juries. In passing upon motions for directed verdicts courts often say that plaintiff has made a prima facie case, or that certain facts authorize a presumption of negligence; but trial courts frequently may not use the same language, in instructions which submit to juries the finding of facts."

The purpose served by, and the importance of, the requisite element of defendant's exclusive control in res ipsa cases is in warranting the inference that defendant (rather than someone else) was negligent. By submitting under the res ipsa theory, and by the first paragraph of instruction No. 2, plaintiff had received the benefit of everything to which he was entitled as regards the element of control, but this instruction goes further. It not only deprecates the defense interposed (by reference to the "mere possibility" of tampering by some third person), but also charges a duty of care with respect to the injuring agency in such a way that the jury would be likely to understand that although it might believe that the acts of a third person (perhaps even plaintiff himself) did intervene, still that fact does not defeat plaintiff's right to recover. The concept reflected in the abstract rule of law embodied in the instruction is directed to the court's function, and not that of the jury. In view of the nature of the defense and the circumstances surrounding the casualty, we hold the challenged instruction No. 2 to be reversibly erroneous.

Defendant assigns error in the refusal of its instruction "A" and in submitting items "Three" and "Five" of plaintiff's measure of damages instruction (No. 7), which items dealt with the subjects of permanent injuries and loss of future earnings. These assignments are based on the claim that the evidence was insufficient to show causal connection between the accident and the cerebral hemorrhage or stroke suffered by plaintiff four months after he returned to work (this notwithstanding there was admittedly proof of a resulting aggravation of plaintiff's pre-existing hypertension). Wherefore it is argued that it was error to refuse instruction "A" which would have withdrawn that subject (stroke or cerebral hemorrhage) from the consideration of the jury; and, for the same reason, it was error to submit the elements of permanent injuries and future loss of earnings in instruction No. 7, there being, in defendant's view, no evidence of any permanent injuries other than that resulting from the stroke, and that the aggravation of plaintiff's hypertension was only temporary. These points turn on the interpretation to be given to the testimony of plaintiff's physician, Dr. Lawton, the defendant contending he did not testify that there was any such causal connection, and the plaintiff countering with the proposition the witness testified in such manner and to such extent as to justify the finding of causal connection. In view of this insistence on plaintiff's part, it is thought that on retrial the evidence on this subject will likely be more specific so that the present objection will not recur, and for this reason we should not decide the point on the present record.

Apart from the question of whether the "order overruling plaintiff's motion for a new trial on the issue of damages only" (from which Jett's notice states his appeal was taken) was appealable under Section

512.020 RSMo 1959, and V.A.M.S., or whether under a liberal construction of Rule 82.08 such designation in the notice is sufficient to authorize appellate review of the judgment itself insofar as concerns the adequacy or inadequacy of the amount thereof, the judgment cannot stand in any event because of the error in giving instruction No. 2. Therefore the question of the claimed inadequacy of the sum awarded is rendered moot, so plaintiff's appeal, which involves only that question, should be, and it is dismissed. In fairness to plaintiff's attorneys it should be made to appear on the face of this opinion, and we accordingly state, that it is not claimed that they were involved in any of the facts or circumstances on which the defense herein is founded.

For the reason noted, the judgment is reversed, and the cause remanded.

All of the Judges concur.