Debra GREEN, a minor, by Lillie Jackson,
her next friend, Plaintiff-Appellant,

v.

Samuel KAHN and Evelyn Kahn,
Defendants-Respondents.

No. 50672.

Supreme Court of Missouri,

Division No. 1.

June 14, 1965.

Don L. Schlapprizzi, Gray & Sommers, St. Louis, for plaintiff-appellant.

John Bardgett, Donald Gunn, Jr., Charles P. Lippert, St. Louis, for respondents.

PAUL VAN OSDOL, Special Commissioner.

Plaintiff Debra Green had verdict and judgment for $50,000 for severe, disabling and disfiguring burns suffered in a fire in an apartment which plaintiff's mother, Shirley Green, who perished in the fire, occupied as a tenant of defendants Samuel Kahn and Evelyn, his wife, owners of the demised premises.

After the trial, however, the trial court sustained defendants' motions for judgment in accordance with defendants' motion for a directed verdict filed at the close of all the evidence and, in the alternative, for a new trial. Subsequently, the trial court set aside the order sustaining the alterna-

tive motions, and again sustained defendants' motion for judgment in accordance with defendants' motion for a directed verdict filed at the close of all the evidence, but, in effect, overruled defendants' alternative motion for a new trial. Plaintiff has appealed from the order and judgment for defendants.

In her petition, plaintiff had alleged, inter alia, that, on March 4, 1960, plaintiff lived with her mother, Shirley Green, at 2713 Rear Stoddard Street in St. Louis, in an apartment which premises were owned by defendants and demised to plaintiff's mother and her family; that defendants by oral agreement in consideration for rent demised the premises including a gas cooking range which was the only means available for heating the apartment; that defendants maintained control of the range and gas line appurtenant thereto; that defendants assumed the responsibility of providing a heating system for the demised premises, but did so negligently and carelessly by furnishing an open gas range for this purpose; and that defendants were negligent in that they knew or should have known that they created a dangerous condition on the demised premises by furnishing a gas cooking range as a means to heat the premises.

Defendants filed a general denial.

Plaintiff's case was submitted to the jury by the verdict-directing Instruction No. 3, as follows:

"The Court instructs the jury that if you find from the evidence that:

"1. On March 4, 1960, the plaintiff was a tenant of premises at 2713 Rear Stoddard which were owned by the defendants and,

"2. The defendants furnished a gas cooking range for this apartment which was intended to be used as the means of heating the plaintiff's premises and,

"3. The defendants retained the right of control over the gas range and gas piping leading thereto and,

"4. The gas range was not a reasonably safe means of heating the apartment rented to plaintiff's family and,

"5. That when used as a means to heat, there was danger of fire and injury resulting from the use of such gas range and,

"6. The defendants knew or in the exercise of ordinary care should have known that there was a reasonable lik[e]lihood or probability of a fire from the use of the gas range as a means of heating the apartment and that by reason thereof, the premises were not reasonably safe, if you so find, and,

"7. The defendants, in furnishing said gas range for the aforesaid purpose, failed to exercise ordinary care and were negligent, and,

"8. That such negligence, if any, directly caused or directly contributed to cause a fire in the apartment and injury to the plaintiff, Then you are instructed that your verdict must be in favor of the plaintiff Debra Green."

Plaintiff-appellant relies on the point that the trial court erred in sustaining defendants' after-trial motion and in entering judgment for defendants. Plaintiff contends (1) there was substantial evidence tending to show that defendants retained control of the gas range in question; (2) defendants, landlords, owed plaintiff, their tenant, a duty to exercise ordinary care to keep the gas stove, over which they retained control, in reasonable safe condition and there was substantial evidence tending to show defendants' conduct in furnishing the gas stove for heating was negligence amounting to a breach of their duty; and (3) there was substantial evidence tending to show that such negligence was a proximate cause of plaintiff's injuries.

In connection with these and converse and other contentions, we think it necessary to make an extended statement of the evidence.

On March 4, 1960, defendants owned two buildings on Stoddard Street in St. Louis. The larger of these buildings, 2713–15 Stoddard, fronted southwardly on Stoddard, and the other and smaller building, 2713–15 Rear Stoddard, also faced southwardly, the front of the smaller building being twenty-five or thirty feet north of the rear of the larger. We infer the smaller building originally was a carriage house, but subsequently was converted into an apartment building.

The rear building was of brick with flat roof, and was divided into three apartments. Plaintiff's mother and her family of four young children, including plaintiff Debra, four years of age, occupied the easternmost apartment (2713 Rear Stoddard). This apartment was of two rooms each approximately nine feet wide, east-west, and sixteen feet long, and each had a door and a window in the south (front) end and each had a window in the north end. All four windows were covered with heavy screen wire. The outside door of the west room was east of the window at that end of that room. There was evidence that a curtain or shade was at this window, and that, in winter, a clothesline was strung from a point above this window diagonally back to and was attached to the wall at the north end of the room. The gas cooking range involved in this case had been installed with back near or against the west wall of the west room with its south side two or three (or four) feet north of the south wall and window. This west room was used as a kitchen, but there was a bathroom area in the north end of the room. The east room was the family bedroom. The kitchen and bedroom were connected by a door through the approximate center of the partition wall. The ceiling of these two rooms was approximately seven and a half feet from the floor. The outside door of the bedroom was locked with a padlock on the outside of the door. A former tenant testified that the lock "belonged to Mr. Kahn;" but, there was testimony of witnesses for defendants that Shirley put the lock on.

Defendants had testified by deposition, and excerpts therefrom were read in evidence as admissions. Defendant Samuel had testified that when he rented the apartment he furnished the stove that was there. It was his property. All the furniture, everything was his. He furnished stoves to all three apartments. The gas ranges were the means the tenants would use to heat their apartments. "I supplied the gas. It came from the front building—a pipe from the front building to the rear." He paid the gas bills for those tenants. This was part of the agreement. The gas stoves he provided were the only means supplied the tenants for heating the premises. The gas line from the front building supplied the gas to the three apartments in the rear. The outside door of the bedroom was locked with a padlock on the outside. "Q. If you came from the bedroom into the kitchen and went outside, would you walk by the stove? A. Yes; you got to."

There was evidence that the pipe supplying gas to Shirley's apartment passed through the partition wall from the "middle" apartment within which apartment there was a valve by which the gas supplying the range in Shirley's apartment could be shut off. The gas meter was located in the front building.

A member of the bombing and arson squad of the police department of St. Louis examined the apartment, 2713 Rear Stoddard, after the occurrence of the fire. He arrived at the scene about 11:00 p. m., March 4, and after the fire had been extinguished, the witness inspected the interior of the apartment. He saw a gas cooking range located in the southwest corner of the kitchen and observed that the fire originated in the approximate location of the range. His investigation indicated the fire was of high origin. There was severe fire damage three feet above the floor—just about the level of the top of the stove. The witness said a laboratory report recited that a plastic clothesline was found in the upper portion, at the neck of

Shirley's body. He saw no source of fire, other than the stove—he found no matches. The wallpaper was charred on the edge where it was hanging above the stove. "As I stated before, I came to the conclusion that the fire originated in the location of the stove, about three feet above the floor." The witness also testified that he had recorded in his police report "that the cause of the fire was blankets over the stove."

A former tenant of the apartment 2713 Rear Stoddard, testified there wasn't any way to regulate the stove burners. When the burners were turned on the flame would just come up about three inches high. There was an agreement as to repairs. If anything went wrong in the apartment, the witness "could call Mr. Kahn", and he would have the repairs done. Once she asked the repairman to adjust the controls of the flame. "He wasn't able to do that." The burners would have to be on all night in cold weather. The night of March 4, 1960, was one of the coldest nights of the winter. The witness had seen the neighbors around there hang things in their apartments to dry. Defendant Samuel had been out there when the stove was being used to heat the rooms. The witness also said Shirley smoked.

A building inspector-supervisor, in charge of the zoning section of the building division of the City, testified that an apartment building such as 2713–15 Rear Stoddard was classified as "Group H Occupancy." There are certain minimum requirements for Group H occupancies with regard to construction as to heating. An open gas range used for heating does not fall within the minimum requirements. The stove in question was designed as a kitchen stove; but the requirements of the Code are supposed to be met if an installation is used or designed for heating purposes.

Raymond Green, ten years of age, brother of plaintiff, was the only witness who was in the apartment when the fire occurred. He had gone to bed at eight or nine o'clock that evening. The other children were in bed. The witness remembered the stove in the kitchen which stove was used to heat the apartment. He was asleep when the fire happened. The burners were on, but there was nothing hanging up in the kitchen when he went to bed. However, a witness for defendants, Carrie Mae Foster, formerly a tenant on the second floor, 2715 Stoddard, testified that she was at Shirley's place about nine in the evening of March 4. Shirley's children were in bed. There were wet blankets on a clothesline over the stove. The burners were on, with flames three or three and a half inches high. The blankets were hung about eighteen inches up from the flames. She left Shirley's place around nine thirty. The day after the fire, the stove that had been in Shirley's place was moved to and installed in the apartment of the witness. "Mr. Kahn had his men" move the stove. The witness said she had used the stove at Shirley's place before the fire and again in her own apartment after the fire. The stove operated fine. The witness had been able to regulate the height of the flames. The witness further said defendant Samuel would be out there on the tenth of every month to collect the rent. He necessarily came to the kitchen door, and if you "looked up" you would see the clothesline strung diagonally front to rear in manner described.

A consulting engineer, witness for defendants, was familiar with the name and type of gas cooking range in question, but had not examined the particular range. It was possible, although not likely, the threads (on the shafts or stems of the valves for regulating the height of the flames of the burners) could become stripped so that the flames at once, when the valves were opened, would come on fully. The witness was shown a photograph of the stove involved herein and his attention was directed to the upright porcelain flange about eight inches high fixed at the back of the stove, behind the burners. The witness was then asked, "Q. In your opinion—is there any danger of fire from these flames catching

anything in the premises, assuming the stove is three or four feet out from one wall and it has a protective flange on the back, is there any danger of fire without anything hanging over it or nothing else in there except the flames about three or three and a half inches high?—A. It is safe that way." And the expert also said that with wet blankets hanging over the stove flames, the blankets or blanket "is going to dry out and it will catch fire."

From admissions, excerpts from defendants' depositions read in evidence, the inferences are clear that defendants rented the furnished apartment at 2713 Rear Stoddard by oral agreement by which they undertook to supply, and pay for natural gas supplied to their tenant for cooking, and for heating the apartment. Also it can reasonably be inferred that defendants undertook or assumed the duty of furnishing the means for cooking, and for heating the apartment; and the means provided consisted of a gas cooking stove with gas service piping appurtenant and attached thereto.

Referring to the petition and the verdict-directing Instruction No. 3, supra, we have seen plaintiff's theory of defendants' negligence was furnishing a gas cooking stove with open flame for heating; and, as we understand it, plaintiff did not and does not now specifically rely for her recovery on the evidence tending to show the valves for regulating the burners were defective.

In this case the initial and underlying question is whether there was substantial evidence that defendants retained control of the gas cooking range they had installed and provided for heating.

▮ (1) It is the established rule that a landlord is under a duty to exercise ordinary care to keep the portions of the premises which he retains in his control in a reasonably safe condition for the use intended and is liable in damages for personal injuries resulting from his failure to perform that duty. Peterson v. Brune,

Mo.Sup., 273 S.W.2d 278; Thompson v. Paseo Manor South, Inc., Mo.App., 331 S.W.2d 1; Marentette v. Luechtefeld, Mo. App., 268 S.W.2d 44. The reading of the Thompson and Marentette cases demonstrates the stated established rule is applicable to unsafe conditions in agencies and appliances which have been reserved by the landlord for the service and use of his several tenants as a group, quite as the rule is applicable to unsafe conditions in the structural portions of the demised premises over which the landlord has retained control for the common use of the several tenants, such as, for example, the porch with defective banister in the Peterson case.

In Gladden v. Walker & Dunlop, Inc., 83 U.S.App.D.C. 224, 168 F.2d 321, 322, examined by the reviewing Kansas City Court of Appeals in the Thompson case, plaintiff had suffered an electric shock from the defective wiring of an apartment; and, in considering whether the landlord or the tenant had control of the electrical installations, it was said, in part: "It is familiar law that a landlord who keeps control over parts of an apartment house must use reasonable care for their safety. We have applied this principle to the lighting of a common entrance stairway. With regard to plumbing and heating systems, the principle extends to operative fixtures in the apartments leased to tenants and operation through them. We think the principle is equally broad with regard to the electrical system. Plumbing, heating, and electrical fixtures are not isolated either in use or maintenance. They must be maintained and used, if at all, in conjunction with the systems of which they are parts. Accordingly the tenant who uses them is usually not expected to maintain them but only to notify the landlord when they appear to be out of order. Since appellee sent an electrician in response to appellants' original complaint, the usual expectation obviously existed here."

▮ In our case, there was substantial evidence and admissions that the supplying

gas pipe for serving the three tenants of the three-apartment building, 2713–15 Rear Stoddard, extended from defendants' front building where the gas meter was. This main supplying pipe, it may be inferred from the evidence, divided or branched out to the three apartments at 2713–15 Rear Stoddard, the branch gas line came through the west wall of 2713 Rear Stoddard from the "middle" apartment, 2714 Rear Stoddard, and served the gas cooking range owned and installed by defendants as the means for cooking *and heating* the apartment, 2713 Rear Stoddard. There was testimony that on at least one occasion upon complaint of the tenant of 2713 Rear Stoddard, defendant Samuel had sent repairmen to repair the stove. It was said this was the agreement. It seems clear to us that the evidence was substantial in tending to show that the main and lateral gas-service piping extending from defendants front building back to and into the three-apartment building with attached operative units or appliances, gas cooking stoves, for cooking and heating, constituted an integrated system for use by the tenants of the three-apartment building as a group and of which system defendants had reserved and retained control.

Defendants (respondents) in their brief disputed plaintiff's assertion that the evidence was substantial in making out a jury issue of defendants' retention of control, and some of defendants' other contentions in their brief are so premised. Defendants have cited the case of Burton v. Rothschild, 351 Mo. 562, 173 S.W.2d 681, and they quote and seek to apply the passage from Tiffany quoted in the Burton Case (173 S.W.2d at page 682) in support of the point urged that "the use of the gas range for heating purposes was open and apparent when the premises were accepted by the tenant and this condition cannot be the basis of liability on the owner." It is seen in the Burton case that, under the allegations of the petition, the facts were that defendant Rothschild was the owner of the premises and had leased the entire apartment build-

ing to one Roselli. The lessee Roselli and not defendant Rothschild had control of the stairway on which the sublessee-invitee plaintiff fell, in fact, the control over the entire building. It would seem that defendants in the instant case, in urging the stated point, have ignored the evidence of defendants' retention of control. And see again the Thompson case, supra, 331 S.W.2d at page 6, whereat it was said that, "as against the landlord, the tenant's knowledge of a defective condition in the premises *over which the landlord has control*, is of force only insofar as it bears upon the tenant's contributory negligence." In the instant case, as in the Thompson case, contributory negligence was not an issue. The Marentette case, supra, is also cited in support of defendants' instant point, but we cannot see that the case aids defendants here.

Defendants also contend it is obvious the gas range was an appliance within the tenant's control. They say, "Nothing is more obvious in this case than the fact that the exclusive use—control—of this gas range was in the tenant." We think defendants here are confusing the use of the gas stove in operating it as contemplated with "control," or more properly, "right of control," in this connection.

■ (2) It has been written that, ordinarily, the duties imposed by the law of negligence arise out of circumstances and are based on foreseeability or reasonable anticipation that harm or injury is a likely result of acts or omissions. Kettler v. Hampton, Mo.Sup., 365 S.W.2d 518, and cases therein cited.

■ We have noted the evidence that the fixture or appliance, the gas cooking range, was installed near the one outside door of an apartment of two low-ceilinged rooms with heavily screened windows and rented to be occupied as living quarters for a tenant family. And here we have no hesitancy in saying we believe it reasonably could be said such an appliance for open-flame heating in the circumstances of its

installation and setting was dangerous and not reasonably safe. We suppose defendants, owners and landlords, knew the circumstances of the installation; actually, the quoted excerpts from defendant Samuel's deposition demonstrate that he knew these facts and circumstances. And furthermore, it seems to us that an ordinarily prudent person in the exercise of ordinary care reasonably should have foreseen (in the circumstances of living in the comparatively limited space for living in the described two room apartment, with the incidence of dining, bathing, washing, playing and other activities of a tenant family—here a family consisting of an adult and four young children) the likelihood that in confining cold weather when it was contemplated the appliance with open flame would be used for heating, some flammable object, substance, or material within the household would somehow or in some manner be brought into contact with or dangerously near the open flames with resultant harm or injury by fire. Indeed, defendants in their brief filed herein have not seriously urged that the evidence was insufficient in tending to demonstrate defendants' negligence as averred and submitted. But defendants do emphatically urge that the evidence was insufficient in tending to support a submission of the issue of proximate causation.

(3) Defendants assert the record is barren of any direct testimony as to how this fire started; nor is there any legally sufficient circumstantial evidence as to what caused the fire, and, they say, without legally sufficient proof of the proximate cause of the fire, plaintiff failed to prove an essential element of her case.

Defendants argue that the circumstances on which plaintiff relies in no sense limit the proximate cause of the fire and plaintiff's injuries to any negligent act or omission on the part of defendants; and defendants, citing Lindsay v. Wille, Mo.Sup., 348 S.W.2d 1, say the circumstances in evidence are consistent with the possibility that the mother Shirley may have started the fire accidentally in working about the gas range, after her son Raymond went to bed.

Here we may say that plaintiff contends herein, as noted supra, there was substantial evidence that negligence of defendants as alleged and submitted was *a* proximate cause of plaintiff's injuries.

In the Lindsay case, there was no substantial evidence, direct or circumstantial, of what defendant Wille did, if anything, which would have caused the revolving door to suddenly move forward. In our case, there was evidence supporting the inference of "something" the mother Shirley did, after her son Raymond and the other children had gone to bed, which, it reasonably could be inferred, at least had its part in causing the fire and injuries. Particularly, we refer to the testimony of Carrie Mae Foster who had come to Shirley's place at nine o'clock and remained until approximately nine thirty. There were wet blankets hanging over the stove. The burners were on with flames three or three and a half inches high. The blankets were approximately eighteen inches up above the flames.

The other "possibilities" suggested by defendants that Shirley or somebody else had done something else which could have caused or had its part in causing the fire have no substantial evidentiary bases, direct or circumstantial, in the record.

■ Here we notice the testimony of the police officer. The member of the bombing and arson squad testified there was severe fire damage just about the level of the stove, and his testimony has the further tendency to negative a source of fire other than the open flames of the gas stove.

■ It is reasonable to say the conduct of the mother, a third-person actor, in hanging wet blankets over the flames and permitting them to remain there, had its substantial part in causing the fire because the natural physical sequence, it may be

inferred, was the fire. As defendants' witness, the consulting engineer, said, "the blanket is going to dry out and will catch fire." But, even so, it seems reasonably clear that, *but for* the flames from the open-flame range there would have been no fire and no injury.

■ As to the legal or proximate cause or causes—the jury reasonably could have found that negligence of defendants as charged and submitted had continued, and was to be considered a direct efficient and producing cause of the injury except for which negligence plaintiff would not have been injured; and that the conduct of the third-person actor, considered as an intervening cause, was but a concurring cause of the injury. As we have said supra, defendants, in the circumstances and setting there stated, in the exercise of ordinary care reasonably should have foreseen the likelihood that something flammable somehow would be brought into contact with or dangerously near the flames of the range with resultant harm or injury by fire. Although the facts and circumstances giving rise to plaintiff's injury were unusual, nevertheless, now, after the occurrence, one could reasonably conclude plaintiff's injury was a natural and probable consequence of defendants' negligence as 'alleged and submitted.

In our examination of cases involving the problems of proximate causation in deciding this case we have read Dickerson v. St. Louis Public Service Company, 365 Mo. 738, 286 S.W.2d 820, particularly we have studied the court's discussion of the problem, 286 S.W.2d at pages 825–826, in connection with the evidence introduced in that case. See also Gaines v. Property Servicing Company, Mo.Sup., 276 S.W.2d 169; Floyd v. St. Louis Public Service Co., Mo.Sup., 280 S.W.2d 74; King v. Ellis, Mo.Sup., 359 S.W.2d 685; Grimes v. Standard Oil Co., Mo.App., 370 S.W.2d 627. See also Shearman & Redfield on Negligence, Vol. 1, Rev.Ed., §§ 33–35, pp. 91–97.

■ We think these cases support our opinion that the evidence in our case was substantial in tending to show that defendants' negligence as alleged and submitted was at least a proximate cause of plaintiff's injuries. As said in the Floyd case supra, 280 S.W.2d at page 78, "Generally, it is sufficient to constitute proximate cause that the negligence charged was the efficient cause which set in motion the chain of circumstances leading up to the injury. The test is not whether a reasonably prudent person would have foreseen the particular injury but whether, after the occurrences, the injury appears to be the reasonable and probable consequences of the act or omission of the defendant. The negligence of the defendant need not be the sole cause of the injury. It is sufficient that it be one of the efficient causes thereof, without which the injury would not have resulted. A party is held liable if his negligence, combined with the negligence of others, results in injury to another."

We hold the trial court erred in sustaining defendants' after-trial motion for a directed verdict and in entering judgment for defendants.

We now shall consider defendants' contentions of errors of the trial court in instructing the jury which contended errors were assigned in defendants' alternative motion for a new trial, and which motion was overruled by the trial court. See Hughes v. St. Louis Nat. League Baseball Club, 359 Mo. 993, 224 S.W.2d 989, 16 A.L.R.2d 904; Caddell v. Gulf, M. & O. R. Co., Mo.App., 217 S.W.2d 751.

Instruction No. 4, given at plaintiff's instance, was as follows:

"The Court instructs the jury that in regard to paragraph Number 5 of Instruction No. 3, that it is not necessary for you to find that the defendants knew or in the exercise of ordinary care should have known of the particular manner in which a fire and injury

would result from the use of the gas range in heating the apartment.

"Therefore, if you find that the use of said gas range did constitute a hazard and if you find the defendants knew or in the exercise of ordinary care should have known that there was a reasonable liklihood or probability of a fire and injury from the use of the gas range as a means of heating the apartment and that by reason thereof the premises were not reasonably safe, then plaintiff has satisfied this element of her case regardless of the fact that the fire might have resulted from unusual or peculiar circumstances."

Defendants complain of error in giving this instruction, because its effect, they say, was to tell the jury that, if the premises were dangerous, the jury could find against defendants no matter how the fire started —even if the fire was deliberately set. They say there is no justification for giving the instruction, at least it served only to confuse and mislead the jury to a conclusion that plaintiff had a right to recover even though the jury believed the fire resulted solely from conduct of a third person.

■ The casual reading of Instruction No. 4 discloses the use of language not infrequently used by reviewing courts in determining the submissibility of the issues of negligence and causation. (See, for examples, Haberly v. Reardon Co., Mo.Sup., 319 S.W.2d 859, at page 863; and Gaines v. Property Servicing Company, supra, 276 S.W.2d 169 at p. 174), and which language was not intended to be utilized by a trial court in formulating instructions to the jury. We doubt that the statements of abstract principles of law or language taken from appellate-court opinions in the formulation of instructions, even in instructions cautionary in nature, or the use of language amplifying, qualifying or explaining other given instructions, do very much

for a concise, correct understandable submission of a case. Implicit in these generally unnecessary, adventurous advices to the jury is the potential hazard of reversible error. See for example, Jett v. Terminal Railroad Ass'n of St. Louis, Mo.Sup., 357 S.W.2d 135.

More carefully reading Instruction No. 4—we see the instruction refers to paragraph 5 of Instruction No. 3, plaintiff's principal verdict-directing instruction. It is noted that the paragraph 5 requires the finding that when the gas range was used for heating there was danger of fire and injury. The first paragraph of Instruction No. 4, continues by telling the jury that it is not necessary for the jury to find that defendants had actual or constructive knowledge "of the particular manner" in which a fire and injury would result from the use of the gas range in heating.

It seems to us that here in the first paragraph of Instruction No. 4 there is a transitional digression in qualifying, or in diverting substitution for paragraph 6 of Instruction No. 3. The second paragraph of Instruction No. 4 continues by "Therefore if you find" (substantially as in paragraph 6 of Instruction No. 3) and advised the jury that "then plaintiff has satisfied this element of her case regardless of the fact that the fire might have resulted from unusual or peculiar circumstances." Is the instruction (No. 4) to be understood as advising that "this element" referred to the required finding of paragraph 5 or to the required finding of paragraph 6 of Instruction No. 3, or to the "element," if so, of the required findings of the two paragraphs 5 and 6 of Instruction No. 3, or could not the jury believe this element, so satisfied, comprised the whole of the hypotheses of Instruction No. 3?

Plaintiff in her reply brief has said the term "this element" refers a second time to paragraph 5 of Instruction No. 3; but it is difficult to see that the paragraph (5), which merely requires a jury finding that

when the range was used as a means for heating there was danger of fire, had any need for amplification by the use of appellate-court language having to do with knowledge of defendants, their negligence and result of such negligence. Of course, the jury was told the defendants' knowledge of "the particular manner" in which a fire and injury would result from the use of the gas range in heating, was unnecessary. This well might have opened the minds of the jurors to the thought "any manner" in which the fire occurred and, with this in the minds of the jurors, when the jury saw that "this element" was satisfied "regardless of the fact that the fire" may have *resulted* from unusual or peculiar circumstance, the jury was likely to have long since forgotten the required findings of negligence of defendants and causation in the verdict-directing Instruction No. 3, and assume that in whatever manner the fire resulted from whatever circumstance, even "unusual or peculiar circumstances," defendants were liable.

We hold the Instruction No. 4 was confusing and misleading and, therefore, prejudicial.

Defendants complain that Instruction No. 3, plaintiff's principal verdict-directing instruction, was erroneous. It is not necessary for us to discuss these contentions of error. The instructions are to be carefully considered by the trial judge and counsel, and errors in instructing the jury thus avoided upon retrial.

The judgment for defendants should be reversed, and the cause remanded.

It is so ordered.

PER CURIAM.

The foregoing opinion by PAUL VAN OSDOL, Special Commissioner, is adopted as the opinion of the Court.

All of the judges concur.