Robin Earl MARLER and Rebecca Gail
Marler, Appellants,

v.

Frank A. DUNN and Erna M.
Dunn, Appellees.

No. 84–2177.

United States Court of Appeals,
Eighth Circuit.

Submitted April 9, 1985.

Decided May 31, 1985.

Rehearing Denied July 2, 1985.

John A. Michener, St. Louis, Mo., for appellants.

Samuel T. Vandover, St. Louis, Mo., for appellees.

Before BRIGHT, ARNOLD, and FAGG, Circuit Judges.

PER CURIAM.

Appellants Robin and Rebecca Marler brought this action against appellees Frank and Erna Dunn for the wrongful death of their infant son. The jury returned a verdict for the Marlers for $90,000. The court [1] granted the Dunns' motion for judgment notwithstanding the verdict and the Marlers now appeal.

In 1982 a fire destroyed the house the Marlers rented from the Dunns. One of the Marlers' sons died in the fire. The fire was determined to have been caused by an electrical arc in a wall outlet. The Marlers' theory at trial was that the Dunns knew or, by exercising ordinary care, should have known of the faulty wiring which created the condition for an arc to occur, but negligently failed to repair it. They asserted that the Dunns retained control over the house and, consequently, had a duty to inspect and maintain it. In support, they introduced evidence that the Dunns' agent retained a key to the house and told the Marlers "to let her know if [they] had any problems." They also introduced the rental agreement in which the Dunns reserved the right, after first notifying the Marlers, "to inspect inside and outside property at least once a month if found necessary." The jury returned a verdict for the Marlers.

After the verdict was returned, the Dunns moved for judgment notwithstanding the verdict. The court granted the motion, ruling that the evidence presented was insufficient as a matter of law to establish that the Dunns could have known of the faulty wiring by using ordinary care. We have carefully reviewed the record in this case and affirm the judgment of the district court granting judgment notwithstanding the verdict on the basis of its memorandum opinion.

FAGG, Circuit Judge, dissenting.

I respectfully dissent.

Under Missouri law, a landlord is legally obligated to maintain in a "reasonably safe condition" those portions of his rental property over which he retains "control." *Lemm v. Gould*, 425 S.W.2d 190, 194 (Mo. 1968) (quoting *Peterson v. Brune*, 273 S.W.2d 278, 280 (Mo.1954)); *Green v. Kahn*, 391 S.W.2d 269, 274 (Mo.1965). If the landlord fails to fulfill this obligation, he may be held liable for personal injuries resulting from this failure. *Green*, 391 S.W.2d at 274. Before liability may attach, however, the plaintiff must show that the landlord had either actual or constructive knowledge of the defective condition. *Lemm*, 425 S.W.2d at 197; *Peterson*, 273 S.W.2d at 282. Constructive knowledge may be imputed to the landlord if he "might have known [of the defect] by the exercise of due diligence * * * in the observance of [his] duty of keeping [the premises] in a reasonably safe condition for the use and purposes for which control * * * had been reserved * * *." *Lemm*, 425 S.W.2d at 197 (quoting *Buchanan v. Wolff*, 105 S.W.2d 26, 30 (Mo.App.1937)).

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

In this case, the Dunns retained sufficient "control" over the premises to give rise to a duty to maintain the premises, including the electrical system, in a reasonably safe condition. The degree of control necessary to create such a duty need not rise to the level of an absolute right to admit or exclude others from the premises at will. *Lemm*, 425 S.W.2d at 195. Rather, in order for the duty to attach, it is sufficient that the landlord "retain[s] a general supervision over the premises for a limited purpose such as making repairs * * *, and the right to enter the premises and make repairs upon his own initiative and responsibility." *Id.* In this case, I conclude that "[t]here were sufficient facts in evidence to entitle the jury to draw the inference that the[ ] [Dunns] were vested with this degree of control and dominion over the premises." *Id.*

Here, the lease specifically provided that "[i]f notified in advance, [the Marlers] give permission to [the Dunns] or their agent to inspect the inside and outside [of the] property at least once a month if found necessary." Further, Frank Dunn himself testified that he had the right to inspect the premises for whatever reason he chose. Mr. Dunn also expressed the view that he had retained the right to enter the property and make repairs whenever he felt it was advisable, and he even acknowledged that a defect in the electrical system was the type of problem that he, or someone acting on his behalf, would "definitely" repair. To this end, the Dunns' agent retained a key to the premises for the very purpose of preserving the property and protecting the Dunns' investment.

Clearly, the Dunns had an unqualified right to enter, inspect, and repair the premises, including the electrical system, on their own initiative, and the requirement that they notify the Marlers ahead of time in no way diminished their right.

> This reservation of right was not alone for the benefit of the tenants but enured to the benefit of the landlords because it entitled them, during the rental period, to take whatever action in the field of repairs and replacements deemed necessary to prevent waste and to protect their reversionary interests. Along with this right and benefit goes the correlative responsibility to keep the premises in a reasonably safe condition for the use intended.

*Lemm*, 425 S.W.2d at 195. Thus, in keeping with the *Lemm* analysis, the Dunns had an obligation to maintain the premises in a reasonably safe condition.

Further, although it appears that the Dunns did not have actual knowledge of the defective condition responsible for the fire, they may still be held liable if they had constructive knowledge of this defect but failed to take reasonable steps to remedy it. In Missouri, whether the Dunns had constructive knowledge of the defect is a question of fact and thus is properly for the jury. *See Lemm*, 425 S.W.2d at 197; *Peterson*, 273 S.W.2d at 283. Here, the trial court properly instructed the jury that before it could return a verdict for the Marlers, it must find both that the Dunns "by using ordinary care could have known of [the defect]," and that the Dunns "failed to use ordinary care to make the wiring reasonably safe or warn the Marlers of its unsafe condition * * *."

At trial, one witness testified that the wiring in the basement of the house had become seriously worn and frayed. Evidence was also presented that the Dunns had actually made an electrical repair to the premises several months before the fire. Additionally, Mr. Marler testified that several weeks before the fire an electrical receptacle in the living room of the house sparked and apparently shorted out when they attempted to plug a television set into it. Further, an investigator for the Missouri State Fire Marshal presented credible testimony that the fire had been caused by a loose wire leading to an electrical receptacle in an upstairs bedroom, and that this condition would have been discoverable upon inspection. Finally, it appears that at no time did the Dunns undertake to inspect or in any way examine the safety of the home's electrical system.

From this evidence, the jury could reasonably have concluded that the wiring in the house had become defective, that this defect could have been discovered upon reasonable inspection, and that the Dunns failed to exercise ordinary care to make the wiring safe. Because I believe these inferences are supported sufficiently by the evidence, I would reverse the district court's grant of a judgment notwithstanding the verdict and reinstate the jury verdict.